(No. 22186.—

THE PEOPLE *ex rel.* Edward Holvey *et al.* Appellees, *vs.* JOHN W. KAPP, JR., *et al.* Appellants.

*Opinion filed February 23, 1934—Rehearing denied April 10, 1934.*

Hugh J. Dobbs, for appellants.

A. M. Fitzgerald, and H. C. Moore, for appellees.

Mr. Chief Justice Orr delivered the opinion of the court:

Under the provisions of the law pertaining to the commission form of city government certain citizens of Springfield, appellees here, presented to the council of that city a petition to initiate the passage of a proposed ordinance increasing the salaries of members of the city's fire department or to compel its submission to the electorate. Upon the refusal of the council to either pass the ordinance or to submit it to the voters a petition for a writ of *mandamus* was filed in the circuit court of Sangamon county to compel the desired action. A demurrer to the petition was sustained in the trial court, but upon an appeal the Appellate Court for the Third District reversed the judgment and remanded the cause, with directions to overrule the demurrer. The writ was then awarded, and from that action a second appeal was taken to the Appellate Court with no change in the result. The case comes here on appeal by certificate of importance.

As we view the record only one question is presented by this appeal, viz.: Are the people of a municipality operating under the Commission Form of Municipal Government act empowered to initiate an ordinance fixing the

salaries of the city firemen? This question can only be answered by a consideration of the statutes and by a determination of whether the fixing of salaries of firemen is an executive or a legislative act. No question concerning the validity or constitutionality of any ordinance or statute is presented.

Appellants contend that the ordinance in question is not such an ordinance as is contemplated by section 47 of the Commission Form of Government act; (Smith's Stat. 1933, chap. 24, par. 312;) that salaries of firemen are not necessarily fixed by ordinance but may also be fixed by resolution or other act of the council, and that the fixing of such salaries is purely an executive matter within the exclusive control and discretion of the mayor and commissioners, and not a legislative matter open to public initiative and referendum under the act. The chief contention of appellees is that since the fixing of such salaries might be properly done by ordinance of the council nothing in section 47 prohibits the initiation of such an ordinance by the people, and that the statute therefore made it mandatory upon the mayor and commissioners to either pass the ordinance submitted to them, without alteration, as required by the act, or thereafter to call a special election for its submission to the electors of the city. A recital, in substance, of various sections of the act is necessary for a better understanding of the issues.

Section 47 provides that any proposed ordinance may be submitted to the council by a petition of electors signed and verified in the manner specified, and thereupon the council shall either pass such ordinance, without alteration, within thirty days after its filing, or shall submit the same to a vote of the electors at either a special or general election. There are no words in this section qualifying or restricting any such proposed "ordinance" to any particular subject matter. After other provisions not pertinent here, section 47 further states that "any ordinance proposed by

petition, or which shall be adopted by a vote of the people, cannot be repealed or amended except by a vote of the people."

While section 47 uses the word "ordinance" exclusively, appellants insist that the legislature meant thereby to designate only such ordinances as might properly be subject to initiative and referendum. In this connection we are referred to the language used in other sections of the act, evidencing the intent to distinguish between the so-called legislative function of councils by ordinance to provide for the election, appointment and discharging of officers and employees, as distinguished from their so-called executive or administrative functions, exercised either by ordinance, resolution or motion, of fixing the compensation of all appointees. Thus, section 25 expressly confers power upon the council by ordinance "to create, fill and discontinue offices and employment other than herein prescribed, according to their judgment of the needs of the city or village; and may * * * remove any such officer or employee appointed by them, * * * and may, by resolution or otherwise, prescribe, limit or change the compensation of all appointive officers or employees." Section 22 provides that the affirmative vote of three members of the council "shall be necessary to adopt any motion, resolution or ordinance, or pass any measure." Section 24 gives the council power to *elect*, by a majority vote, a city clerk, corporation counsel, city attorney, assistant city attorney, city treasurer and library trustees. Section 27 confers upon the council the power to appoint and discharge the heads of all principal departments subordinate to the departments provided for in section 23 of the act, with provision that by ordinance the commissioner of each department may be vested with the right of appointing and discharging the heads of his own subordinate departments. Section 28 gives similar power of appointment and discharge to each commissioner as in section 27

in cities which have not adopted the civil service acts of 1895, "except those elected or appointed by the council by virtue of sections 24 and 27." Section 30 declares that the salaries of the mayor and commissioners shall be fixed by the council at certain sums, according to population. Then follows section 31, with a provision that "all other officers, assistants or employees of such city * * * shall receive such salary or compensation as the council thereof shall by ordinance provide," etc.

From the foregoing it will be noted that section 25 authorizes the council to fix the compensation of all appointive officers or employees "by resolution or otherwise," while section 31 declares that all other officers, assistants or employees shall receive such compensation as the council shall provide "by ordinance." Under a familiar rule of construction these two sections should be construed together, if possible, so as to give each a reasonable meaning and application.

Prior to 1910, when the legislature passed the Commission Form of Government act, this court had occasion to judicially construe the words "ordinance" and "resolution." In *Chicago and Northern Pacific Railroad Co.* v. *City of Chicago,* 174 Ill. 439, we held that "an ordinance prescribes a permanent rule of conduct or government, while a resolution is of a special and temporary character. Acts of legislation by a municipal corporation which are to have continuing force and effect must be embodied in ordinances, while mere ministerial acts may be in the form of resolutions." This construction was subsequently adhered to in *Village of Altamont* v. *Baltimore and Ohio Southwestern Railway Co.* 184 Ill. 47, and *People* v. *Mount,* 186 id. 560. "When words have a well settled meaning through judicial interpretation," we said in *Murrell* v. *Industrial Com.* 291 Ill. 334, "they must be understood, when used in a statute, to have that meaning unless a different meaning is unmistakably indicated." Therefore we must presume that the

legislature in framing the act under discussion used the words "ordinance" and "resolution" in their accepted legal sense.

In construing the particular sections of the act involved we must ascertain and give effect to the intention of the legislature. This intent, as we held in *Bowman* v. *Industrial Com.* 289 Ill. 126, "is to be gathered from the necessity or reason for the enactment and the meaning of the words, enlarged or restricted according to their real intent. In seeking this intention the court will always have regard to existing circumstances, contemporaneous conditions, the object sought to be attained by the statute and the necessity or want of necessity for its adoption. It must also have in mind the language used by the legislature, the evil to be remedied and the object sought to be attained. In construing a statute the court will not be confined to its literal meaning. A thing within the intention is regarded within the statute although not within the letter. A thing within the letter is not within the statute if it is not within the intention. When the intention has thus been ascertained from the reading of the statute, words may be modified or altered so as to obviate all inconsistencies with such intention."

Inspection of sections 24, 27 and 28 discloses that the municipal operatives are divided into four groups: First, the mayor and commissioners, who are elected by the people; second, officers having delegated ministerial power (those named in section 24,) who are elected by the council; third, subordinate officers, to be appointed by the council unless this power of appointment be delegated by the council to the respective commissioners heading departments; and fourth, those referred to in section 28 who in the absence of civil service are appointed by the respective commissioners. Turning to the matter of compensation, we find that the first group is covered by section 30 and that section 25 covers those appointed to office

in groups 3 and 4. Section 31 did not presume to cover all, but was limited to cover "all other" officers, assistants or employees. This phrase must therefore be read with sections 25 and 30 in mind. Section 31 therefore covered the second group and also took care of municipal operatives whose offices had been or might be created by various statutory enactments. It is thus seen that sections 24, 25, 27, 28, 30 and 31 are harmonious and evidence a well-expressed legislative intent.

We are left to determine whether the fixing of compensation of the chief of the fire department, who is in the third group, and the compensation of the firemen of all grades, who are in the fourth group, is a legislative or an executive act. McQuillin, in his work on Municipal Corporations, (vol. 1, 351c,) aptly states: "Both legislative and executive powers are possessed by municipal corporations. Often executive powers are vested in the council or legislative body and exercised by motion, resolution or ordinance. Executive action evidenced by ordinance or resolution does not subject such action to the power of the referendum, which is restricted to legislative action as distinguished from mere administrative action. The form or name does not change the essential nature of the real step taken. The mode of effecting the action is not important." On page 374 he continues: "Executive and administrative duties are such as concern the executing of existing laws. Acts which require the ordaining of new laws are legislative. Thus, where it can be shown that the particular act could not have been done without a law or ordinance, such act is to be considered legislative."

The facts and law in *Murphy* v. *Gilman,* 204 Iowa, 58, 214 N. W. 679, are strongly in point here. That case also involved the propriety of a *mandamus* proceeding to compel officers of a city under commission form of government to pay the salary of a fireman as fixed by an ordinance adopted under initiative and referendum statutes.

The particular statute there provided that every officer or assistant should receive such salary as the council should by ordinance provide, and the salary or compensation of all other employees was to be fixed by the council. It was contended that the subject matter of the ordinance was not within the purview of the initiative and referendum statutes because the fixing of salaries of firemen was not required to be by ordinance. It was there held that the initiative and referendum statutes applied only to such acts as are legislative in character as distinguished from those that are of an administrative or executive character; that the establishment of a fire department was a legislative act and was properly accomplished by ordinance on account of its permanent character, but that the fixing of compensation of members of the fire department was an exercise of the administrative function of the city. As a reason for this distinction the court there held: "What is a proper compensation may depend upon many changing conditions which have to be met from time to time and may properly be provided for in a less permanent way than by ordinance. * * * The right of initiative under the statute applies only to an ordinance, and is subject to the further limitation that it must be an exercise of the legislative function of the city."

It is to be noted that section 25 of the Commission Form of Government act contains three separate provisions. The last one states that the council "may, by resolution or otherwise, prescribe, limit or change the compensation of all appointive officers or employees." The fire department is created by ordinance and the administration thereof is assigned to one of the commissioners. The council, in compliance with the law, (sec. 23,) provides rules and regulations for the conduct of the department. The number of firemen employed and their classification in the service changes from time to time as the exigencies of the situation may demand. Compensation varies according to

the skill or experience of the individual fireman and the hazard of his particular employment. It is therefore clear that the compensation to be paid each employee of the fire department can only be fixed at a certain amount for a comparatively short length of time. The scale of pay lacks that condition of permanency and continuity that prevents it being a set scale which shall not vary under changing circumstances. That this was the view taken by the legislature cannot be gainsaid when we study the third provision of section 25. As a resolution does not connote permanency, we cannot escape the conclusion that the fixing of salaries of the employees in the Springfield fire department was an executive or administrative act and not legislative in character. It was therefore not a proper subject for regulation by the electorate, as it is quite generally held in this country that the power to initiate legislation under statutes providing for the initiative and referendum in the conduct of municipal affairs does not extend to such functions of city government as are purely administrative in character. *Hopping* v. *Council of City of Richmond,* 170 Cal. 605, 150 Pac. 977; *Schroeder* v. *Zehrung,* 108 Neb. 573, 188 N. W. 237; *Dooling* v. *City Council of Fitchburg,* 242 Mass. 599, 136 N. E. 616; *Long* v. *City of Portland,* 53 Ore. 92, 98 Pac. 149; *Brazell* v. *Ziegler,* 26 Okla. 826, 110 Pac. 1052; *State* v. *Edwards,* 305 Mo. 431, 266 S. W. 127; *Oakman* v. *City of Eveleth,* 163 Minn. 100, 203 N. W. 514; *Meade* v. *Dane County,* 155 Wis. 632, 145 N. W. 239; *Dallas Railway Co.* v. *Geller,* 114 Tex. 484, 271 S. W. 1106.

Although the council, under section 31 of the act, might pass an ordinance fixing compensation of appointive officers and employees, such action might also be taken by "resolution or otherwise" under section 25. In other words, the legislature has allowed the council to determine the form of its action. The form of action taken, whether by ordinance, resolution or motion, is relatively unimportant.

The subject of the action, whether legislative or administrative in character, is all-important and determines the applicability of section 47. If the subject is legislative its purpose can only be accomplished by an ordinance, and the electorate, under section 47, is given power to initiate it, but not otherwise.

The judgments of the circuit and Appellate Courts are therefore reversed and the cause is remanded to the circuit court of Sangamon county, with directions to dismiss the petition for the writ of *mandamus*.

*Reversed and remanded, with directions.*