313 P.2d 475

**Ed. B. SHRIVER et al., Plaintiff,**

**v.**

**I. G. BENCH, Provo City Recorder, Defendant.**

No. 8678.

Supreme Court of Utah.

July 9, 1957.

Arnold C. Roylance, Springville, Elmer L. Terry, Provo, for plaintiff.

George S. Ballif, George E. Ballif, Provo, for defendant.

A. M. Ferro, Salt Lake City, amicus curiae.

CROCKETT, Justice.

The question presented for determination is whether the setting of salaries for policemen and firemen is a proper subject of initiative or referendum under the laws of this state and the home rule charter of the city of Provo.

Ed. B. Shriver and nine others prepared such an initiative petition and presented it to I. G. Bench, Provo City Recorder. Upon his refusal to accept and file it, they sought a writ from this court to compel him to take the necessary preliminary steps to submit the salary issue to the electorate in the municipal election this fall.

Provo's city government functions under a council-manager charter, Article 10, Sec. 1 of which reads:

1. The powers of initiative and referendum are also reserved to the people in the Utah Constitution, Art. VI, § 1(2).

"The people continue to reserve to themselves the powers of initiative and referendum to be exercised in the manner prescribed by general law."

The general law, 20–11–21, U.C.A.1953, provides:

" * * * legal voters of any city or town, in such numbers as herein required, may initiate any desired legislation and cause the same to be submitted to the law-making body, or to a vote of the people of such city or town for approval or rejection, or may require any law or ordinance passed by the law-making body of such city or town to be submitted to the voters thereof before such law or ordinance shall take effect."[1]

It is the position of the recorder that initiative and referendum only apply to matters which are legislative in nature; that the setting of salaries is a purely administrative function and thus not within the scope of the initiative and referendum law.

In the case of Keigley v. Bench[2] this court manifests its recognition of the well-known principle that initiative and

2. 97 Utah 69, 89 P.2d 480, 483, 122 A.L.R. 756; in another recent case, Dewey v. Doxey-Layton Realty Co., 3 Utah 2d 1, 277 P.2d 805, this court held that changes in the zoning laws could not be initiated although this decision was not based on the administrative-legislative distinction.

referendum laws apply only to matters which are legislative in character. In the main opinion by Chief Justice McDonough it was pointed out that such is the only application which would render these laws practical and workable, and that this is made particularly clear by looking at the evils to be encountered if they were permitted to be used in reference to matters purly administrative. He stated:

"If every dissatisfied bidder or disappointed applicant for municipal work could invoke the machinery of the referendum of the statute, thereby suspending the taking effect of the measure thus assailed, efficiency and economy in the business administration of a city would be seriously affected. * *

"To hold otherwise would so seriously interfere with municipal government and administration that we could not espouse the view without explicit statutory pronouncement, * * *."

The further problem: Whether the fixing of salaries is an administrative or a legislative act is a question fraught with some difficulty and one which has never been passed upon by this court. However, it has engaged the attention of the courts of numerous of our sister states as shown in the annotation at 122 A.L.R. 782 following the report of our own case of Keigley v. Bench, supra. The text writer there undertakes to sum up the situation:

"Logically, it would seem that as a general proposition ordinances dealing with the fixing of salaries of municipal officers and employees other than those specifically provided for by law are merely administrative in character * * *, and therefore outside the operation of initiative and referendum provisions. However, the decided cases are in confusion on the subject, and it seems impractical to attempt to reconcile them, or to make any distinctions other than those which may appear in setting out the reasoning and conclusions of the court in each case, and the particular statutory provisions involved."

A research of the reported cases indicates that the numerical weight of authority of jurisdictions in this country, which have passed upon the question, take the position that the fixing of salaries is a proper subject for legislative action.[3] Without

3. Collins v. City & County of San Francisco, 112 Cal.App.2d 719, 247 P.2d 362; Spencer v. City of Alhambra, 44 Cal.App. 2d 75, 111 P.2d 910; Rives v. City of Paducah, 287 Ky. 709, 155 S.W.2d 33; City of Maysville v. Kenton, Ky.1952, 252 S.W.2d 39; State ex rel. Mulvoy v. Miller, 315 Mo. 41, 285 S.W. 504; Furlong v. Board of Com'rs of Town of Nutley, 15 N.J.Super. 541, 83 A.2d 652; State v. Eastcott, 53 S.D. 191, 220 N.W. 613; State ex rel. Loe v. Davis, 41 S.D. 327, 170 N.W. 519; Glass v. Smith, 150 Tex. 632, 244 S.W.2d 645; Taxpayers' Ass'n of Harris County v. City of Houston, 129 Tex. 627, 105 S.W.2d 655; State ex

discussing the cases individually, we observe that an analysis of them shows that most are distinguishable because of the particular wording of the charter, statutes or ordinances involved. But it must be conceded that there are a number of cogent arguments discussed in those cases pertinent to the general proposition that the fixing of salaries is a proper legislative function. They may be summarized thus:

In a democratic society the fundamental power of government is in the people, and the policy of the law generally is to regard it as being reserved to them except as it may have been clearly declared otherwise. Following this principle courts historically have been reluctant to say that particular measures are not subjects for legislation where any legislative process set up by law has been followed. And some courts have inclined toward giving the initiative and referendum provisions what they term a "liberal" construction based on the reasoning that this recognizes that the political power reposes in the people, rather than to so apply the law as to minimize their power.[4]

It is reasoned that the fixing of salaries is always, at some point in the process, a legislative act because the creation of the office itself is a legislative function. While it is true that the legislature can provide for an administrative fixing of salaries if it pleases, it is not necessarily required to do so and may itself also prescribe the salaries to be paid.

It is also urged that because of the vital importance of proper salaries for public employees to the end that efficient public services be maintained, the subject matter concerns basic public policy which it is the prerogative of the legislative branch to determine.

Finally, it is suggested that it is legislative because the problem of salaries is of such concern and importance that it in fact engages a great deal of the time of the council.

On the other side of the scale, there exist persuasive arguments that the activity in question is administrative in nature.[5] The authorities uniformly stress that actions which relate to subjects of a general or permanent character are usually legislative, while those of a temporary nature are usually administrative.[6] It appears to us that notwithstanding the effort to make these salary schedules as permanent as possible

---

rel. Payne v. City of Spokane, 17 Wash. 2d 22, 134 P.2d 950; State ex rel. Pike v. City of Bellingham, 183 Wash. 439, 48 P.2d 602; State ex rel. Leo v. City of Tacoma, 184 Wash. 160, 49 P.2d 1113.

4. State ex rel. Sharpe v. Hitt, 155 Ohio St. 529, 99 N.E.2d 659; 5 McQuillin, Municipal Corporation, § 16.51.

5. The following authorities have held that salary fixing is not properly the subject of initiative or referendum: People ex rel. v. Kapp, 355 Ill. 596, 189 N.E. 920; Murphy v. Gilman, 204 Iowa 58, 214 N.W. 679; McElroy v. Hartsfield, 185 Ga. 264, 194 S.E. 737.

6. See Keigley v. Bench, note 2 supra.

by tying them into the U. S. Department of Labor's Consumer Price Index, considerable doubt exists as to whether such salary fixing can stand up to this "permanency" test. Experience teaches that there are many factors, a number of which are referred to in the next paragraph, which are constantly subject to change, necessitating the re-examination of the question of salaries at frequent intervals.

Another consideration, the "practicality test" supports the administrative viewpoint. The fixing of salary schedules in a modern city with its numerous departments and various classes of employees is a duty which can best be performed by persons having specialized training and experience in municipal government generally and particular knowledge of the affairs, fiscal and otherwise, of the city. They must be conversant with many facts, such as: prevailing wage scales for similar services both in public service and private industry; the supply and demand for labor of the classes involved; the demands of the various departments upon the public treasury and the balance to be maintained among them; the current inflationary or deflationary trend of money; the extent of the public debt; the money resources available; the tax potential and its limitations; and the overall budget within which the city is required by law to operate.[7]

It can readily be seen from the foregoing that analyzing the factors which should be taken into consideration in fixing salaries, together with other considerations which must be weighed in individual cases, presents a problem of such complexity that it is not practical for the public to give it sufficient time and attention to make a proper determination of the matter, and further, that the changes which are continually occurring make it highly desirable that there be some expeditious method of re-examining the situation at frequent intervals. This points to the conclusion that it is much simpler, easier, and comports more with reason and the practical exigencies of the operation of city government that the salaries be adjusted by the administrative procedure set up in the charter. This is one of the bases of reasoning relied on by the courts in passing on whether a proposed action is legislative or administrative. If the result would be to impair the efficient administration of the municipality, the courts tend toward the conclusion that initiative and referendum provisions are not applicable.[8]

A further point, and one which we consider of paramount importance in the instant case, is that the method which has been set up for the fixing of salaries of Provo City policemen and firemen is in fact administrative in character.

7. See 10–10–2 to 10–10–8, U.C.A.1953; also Art. 6, § 9 Provo City Charter.

8. See 5 Utah Law Review 413.

334

Under the Council-Manager form of government which the people of Provo have adopted through their charter, the governing power of the city is vested in the elected council,[9] which, in turn, appoints a city manager[10] who is the chief executive officer and head of the administrative branch of the government.[11] Various administrative departments are set up, some by charter and others allowed by ordinance, each having a director who is under the supervision and control of the city manager.[12] The council is directed to deal with the administrative service solely through the city manager.[13] One of these administrative departments which is created by the charter is the department of personnel.[14] The personnel director is given the power to prepare and maintain a pay plan in the city service.[15]

The civil service of the city is divided into the classified and the unclassified service.[16] Those in the unclassified service are the elective officers, the city manager, the city recorder, directors of departments, the city attorney, certain assistants of the city manager, members of municipal boards and commissions, persons employed to make special inquiries or investigations, and cer-

tain part-time help.[17] All others, which would include policemen and firemen, are in the classified service.

As to the unclassified service, various provisions of the charter provide for the fixing of salaries.[18] However, as to the classified service, the following procedure is set up. A schedule of pay is prepared by the personnel director. This schedule is submitted to the city manager who makes such changes as he deems desirable. The plan is then submitted to the council for adoption. If the council takes no action, the plan automatically goes into effect after thirty days.[19]

From the foregoing procedure it seems clear that the pattern set up in the charter for adjusting salaries through action of administrative officials is properly characterized as an administrative process. This is particularly so because salary changes automatically go into effect without any action of the council whatsoever.

 Looking at this situation from another angle to test the validity of this conclusion, this question presents itself: Could the council disregard the provisions of the charter and, without following the procedure outlined, make payroll changes

---

9. Article 1, Section 2, Provo City Charter.
10. Ibid. 2–6.
11. Ibid. 3–2.
12. Ibid. 3–4, 5.
13. Ibid. 2–8.
14. Ibid. Article 7.
15. Ibid. 7–2(5).
16. Ibid. 7–8.
17. Ibid. 7–8(1).
18. Ibid. 2–3 (salary of councilmen set by the charter); 7–5 (compensation of members of the civil service commission to be fixed by ordinance).
19. Ibid. 7–11.

for classified employees in the same manner as they perform other legislative functions? The likelihood is that they could not. At any rate it seems to be the clear intent of the charter that they should not. It cannot be doubted that where a manner of performing a particular phase of municipal activity is outlined in a city charter, it should be followed because the charter is the basic instrument of government within which the city or town should operate.[20]

The conclusion we reach does not remove nor withhold from the people the basic control of salaries. Admittedly the procedure to express their will is different because it is done through the elected council. It entrusts to those who are given that duty under the charter the responsibility of either functioning in accordance with the will of the electorate or being held accountable at the next election. This may seem somewhat indirect, but even so, it is hardly more complicated than the holding of a public election on such an issue. A further difficulty to contemplate is that, if the gate were opened to this type of procedure, there is no way of telling how far it might be extended by groups or individuals who may want to take their problems to the electorate. Since the city council is to be elected at the same election in which this initiative is proposed, there appears to be no reason why all of the arguments with respect to the benefits of adequate wages, better working conditions and retention of qualified, experienced personnel and every ground suggested in favor of the salary proposal cannot be presented to the people as issues in the election. They then can make their choice by electing councilmen who will carry out their desires.

We do not regard the instant case as presenting the question whether, under proper circumstances, it would be competent for the legislative power to deal with salaries. Undoubtedly the fundamental power to do so resides in it and in the people until and unless the law is established otherwise. It is likewise competent for them to take cognizance of the practical exigencies involved in certain governmental functions and to prescribe a more efficient and convenient way for carrying them out than to have the whole electorate concerned with them. This the people of Provo have done in the instant situation by adopting their charter which sets up the administrative procedure hereinabove referred to for the classification of personnel and the setting of salaries. Parenthetically, we observe that we know of no reason why they could not proceed to amend their charter in the manner prescribed by law to set up some other procedure should they seem so advised. Inasmuch as the charter specifically commits them to the method of procedure hereinabove discussed, the charter should be re-

20. See Utah Rapid Transit Co. v. Ogden City, 89 Utah 546, 58 P.2d 1.

garded as controlling as to that particular function of the city government.

From the foregoing considerations we are of the opinion that the defendant recorder was justified in refusing to act upon the petition for initiative on the ground that the proposed action was administrative and not legislative in character.

The alternative writ is recalled. No costs are awarded.

McDONOUGH, C. J., and WADE, J., concur.

WORTHEN and HENRIOD, JJ., concur in the result.