431 P.2d 559

**GIBBONS & REED COMPANY, a corporation, and Gibbons & Reed Concrete Products Company, a corporation, Plaintiffs and Respondents,**

**v.**

**NORTH SALT LAKE CITY, a municipal corporation, Defendant and Appellant.**

No. 10662.

Supreme Court of Utah.

Sept. 7, 1967.

*o*

Thomas, Armstrong, Rawlings & West, Salt Lake City, for appellant.

Bryce E. Roe, Salt Lake City, for respondents.

CALLISTER, Justice.

North Salt Lake City, a municipal corporation, appeals from a judgment prohibiting the enforcement of two of its zoning ordinances and one excavation ordinance, to compel the discontinuance of the use of plaintiffs' property for sand and gravel operations. The primary question presented concerns the validity of the provisions of the ordinances as applied to plaintiffs' operations on the property herein referred to as parcel D.

The property involved in this dispute consists of real property situated within the municipal boundaries of North Salt Lake City. It is divided into four parcels, and identified here by the letters A, B, C, D. Parcel D borders a subdivision known as Hillside Gardens which consists of 140 lots. Prior to 1957 no zoning ordinances were in effect which related to the use of the above parcels. On August 5, 1957, after proper notice and a public hearing, North Salt Lake City enacted the "original Zoning Ordinance." Under its provisions parcels A, B and C were located in a zone designated for forestry and natural resource use, called "F–1." Excavation of sand, gravel, and other related materials are permitted in F–1 zones. Parcel D was located in an area designated for residential use, called "R–1." Excavation of sand, gravel, and other related materials are not permitted in R–1 zones.

At the time of the enactment of that original zoning ordinance, plaintiffs were the owners of parcel A. Parcels B and D were owned by the Gibbs family. Plaintiffs acquired parcels B and D in 1959 from the Gibbs family, parcel D by purchase and parcel B by lease. At the time of the transfer plaintiffs were aware of the provisions of the 1957 zoning ordinance, but apparently bought the land relying on the state statute which provides that the zoning authority shall not deprive the owner of property of its use to which it was lawfully devoted prior to the enactment of the ordinance.[1]

On April 3, 1961, North Salt Lake amended its zoning ordinance and enacted North Salt Lake City Ordinance No. 52, which changed the zoning classifications of parcels B and C from F–1 to R–1 thus placing them in a zone prohibiting the excavation of gravel materials. Then on January 15, 1962, North Salt Lake passed Ordinance No. 60 which contains restrictive provisions and regulations allowing the city council and building inspector to approve or disapprove rehabilitation plans and fix amounts of bonds.

Despite the language of the above three ordinances, the plaintiffs continued their sand and gravel operations until August 18, 1964, when the defendant city served them with a "Stop Order" causing plaintiffs to discontinue excavation and crushing operations. Plaintiffs then brought suit asking that the zoning and building ordinances relied upon by the defendant in issuance of the "Stop Order" be declared invalid as they applied to their operations. After an extended trial, the lower court found that: both the zoning ordinances of North Salt Lake City were invalid as to parcels B, C, and D and unenforceable insofar as they prohibited excavation of sand, gravel and

1. 10–9–6, U.C.A., 1953. See also North Salt Lake Code, § 10–1–2.

other related materials and prevented the maintenance of haul roads. The court observed that, by virtue of the usage to which the property had been put both prior and after the enactment of the zoning ordinances, any prohibition of use would be unreasonable and confiscatory and would result in the taking of private property without due process, which would be violative of both the state and federal constitutions and also Utah Code Ann. § 10–9–3 (1953). The court also concluded that with respect to the properties of plaintiffs (B and D) that North Salt Lake Excavation Ordinance No. 60 was invalid and violative of the equal protection and due process clauses of both the state and federal constitutions since it placed upon the property owners the unreasonable burden of furnishing detailed rehabilitation plans prior to the time at which the character of the ground minerals could be known and because it permitted the city council and building inspector to approve or disapprove rehabilitation plans and fix amounts of bonds without adequate standards having been established.

From that judgment the defendant seeks a reversal. This appeal only involves two parcels, B and D. Plaintiffs stipulated that they no longer had any interest or claim in parcel C and defendant concedes in its brief that the only property which the zoning ordinances are in issue with here is parcel D. Defendant, however, still contends the excavation ordinance is applicable to both B and D.

We first address ourselves to the validity of the 1957 zoning ordinance as it applies to parcel D. The lower court found that parcel D was used for excavation of sand and gravel and other related materials at the time the 1957 zoning ordinance was enacted, and has continued at all times since. Plaintiffs' interest is more appropriately called a nonconforming use since it existed on the effective dates of the 1957 zoning restrictions and has continued since that time in nonconformance to the ordinance.

The defendant contends the 1957 zoning ordinance is not unconstitutional under either federal or state constitutional prohibitions against taking of property without due process of the law. However, since we find this case is determinative under the state statute it is unnecessary for us to consider whether due process forbids a forced discontinuance of the plaintiffs' use.

The power of North Salt Lake to zone is derived from the state.[2] The right to regulate the use of property within municipal limits is limited for the purpose of promoting the health, safety, morals, and the general welfare of the community. The statutes provide that the regulations shall be made in accordance with a comprehensive plan to promote health and the general

2. 10–9–1 to 10–9–18, U.C.A.1953.

welfare of the community. They also provide that such regulations "shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the city."

The defendant city contends that the 1957 zoning ordinance which prohibits gravel operations in parcel D was a valid exercise of this police power since the ordinance was substantially related to public health, safety, morals and general welfare. Defendant city contends that a gravel pit would lower the value of the homes in the subdivision located just north of parcel D. It also contends that the dust problem was a motivating factor in enacting the ordinance and that the reclassification of parcel D was not arbitrary since that property was the logical choice based on natural boundaries. Defendant stated in the brief that the parcel was never intended to be used for gravel operations and that the owners of homes in the subdivision had relied on such lack of intent. Defendant also cites several cases which contain words to the effect that courts should defer to the zoning authority since zoning is a legislative function in which the authority has a wide latitude of discretion, and that if it is reasonably debatable that the zoning ordinances promote the general welfare the court should not substitute its judgment for that of the zoning authority. Marshall v. Salt Lake City, 105 Utah 111, 141 P.2d 704, 149 A.L.R. 282; Phi Kappa Iota Fraternity v. Salt Lake City, 116 Utah 536, 212 P.2d 177; Gayland v. Salt Lake County, 11 Utah 2d 307, 358 P.2d 633; Dowse v. Salt Lake City Corporation, 123 Utah 107, 255 P.2d 723; Walton v. Tracy Loan & Trust Co., 97 Utah 249, 92 P.2d 724; Naylor v. Salt Lake City Corporation, 17 Utah 2d 300, 410 P.2d 764.

■ Although the wisdom and the nature of zoning power has been left in the discretion of the city authorities, the courts may still intervene and set aside their action if such ordinances are confiscatory, discriminatory, or unreasonable. See Marshall v. Salt Lake City, supra; Dowse v. Salt Lake City Corp., supra. While the precise question presented here has not heretofore been considered by this court, the rules applicable to nonconforming uses are well established. In applying the rules of zoning law, the facts in each particular case must be taken into consideration. Herman v. Village of Hillside, 15 Ill.2d 396, 155 N.E.2d 47 (1959); County of Du Page v. Elmhurst-Chicago Stone Co., 18 Ill.2d 479, 165 N.E.2d 310 (1960). The cases cited by the defendant do not involve diminishing asset property like we have here. They do not involve zoning action which makes almost useless otherwise valuable land. The case here is not the usual case of a business conducted within buildings, nor is

the land held merely as a site or location whereon the enterprise can be conducted indefinitely with existing facilities. In a gravel operation the land itself is a material or resource. It constitutes a diminishing asset and is consumed in the very process of use. Under these facts the ordinary concept of "use" must yield to the realities of the business.

We find sufficient evidence in the record to support the trial court's findings that the ordinance of 1957 which prohibits quarrying operations on parcel D is of no real gain to the public in general. The record shows no foreseeable future need for residential property in that area. The lower court evidently did not find any substantial evidence to show any apparent dust problem specifically attributed to the quarrying operations. Unless the dust becomes a nuisance, a zoning ordinance which required the discontinuance forthwith of a nonconforming use would be a deprivation of property without due process of law. McCaslin v. City of Monterey Park, 163 Cal.App.2d 339, 329 P.2d 522, 526 (1958); Dobbins v. City of Los Angeles, 195 U.S. 223, 25 S.Ct. 18, 49 L.Ed. 169 (1904). The lower court was not of the opinion that the gravel operations would have any substantial adverse effect upon the value of other property in North Salt Lake. In fact there was testimony at trial that because of the influence of industrial activity in other gravel pits surrounding the subdivision on the south and east, and the highway, commercial areas, and industrial activities on the north and west, the excavation on parcel D would not adversely affect the value of the subdivision. Conversely, if such an ordinance were allowed, the record indicates that the fair market value of plaintiffs' property would be reduced from almost $86,000 to approximately $39,000. In addition to that, the plaintiff would be unable to utilize sand and gravel deposits of a value approximating $1,000,000. The defendant both in its brief and in oral argument contended that it is error to consider value as a factor in determining the reasonableness of the ordinance. It cites Dowse v. North Salt Lake City Corporation, 123 Utah 107, 255 P.2d 723 (1953), a case in which action was brought by a landowner against a city to rezone his property for the more profitable use as commercial property and not residential property. There we held that "the fact that it has become unsuited for residential purposes does not show discrimination or reveal arbitrary action. The character of the district as a whole must be kept in mind in determining whether the health, safety, morals or general welfare of the district and hence of the community would be promoted by permitting encroachment into the residential area of commercial or industrial establishments." The language in Dowse only indicates that value "alone" would not be enough to classify an action arbitrary. Other factors must also

be taken into consideration. The present case is much different than Dowse since it is not an action brought to change a use, it is an action to preserve a nonconforming use. The type of use here is a diminishing asset where as in Dowse it was merely surface property.

In addition to the possible loss to the owners, we must also consider the loss to the public in general. This gravel pit furnishes large quantities of sand and gravel used in construction of roads and buildings. The gravel pit is also being utilized for the most beneficial use. There was evidence that the plaintiffs have conducted their operations in such a way as to create a future beneficial use since the materials will be removed so as to bring the grade down to a certain level on the south side to about the level of U. S. 91 where the property will then be leveled off and thus be used for other permissible uses. There was evidence to the effect that if the whole of parcel D were stripped there would be no more effect upon the value of the subdivision property than exists already. Thus, after considering all the factors involved, including the existing use of the property, the availability of a natural resource, the severe loss to both the fee owners and the public as compared to the relatively small inconvenience to owners in that neighborhood, we conclude that there is evidence in the record to support the trial court's decision that the zoning ordinance as enforced against the plaintiffs' property is an invalid exercise of the police power. Utah Code Ann. § 10–9–1 (1953).

Defendant next contends that although under the zoning law of this state it may not deprive plaintiff of any nonconforming use, it can prevent plaintiff from extending that nonconforming use into parcel D. It is defendant's contention that plaintiffs have no pre-existing rights to extend their nonconforming use into parcel D for the following reasons: (1). Prior to the 1957 zoning ordinance, parcel D was never part of any gravel operation, nor was there any indication the land would be used for gravel operations; (2) Even if there had been some gravel activities on parcel D, the use was abandoned prior to the passage of the 1957 zoning ordinance and became void as provided under the North Salt Lake Code § 10–8–6 which provides that "nonconforming use of land * * * which has been abandoned shall not thereafter be returned to such nonconforming use"; (3) Parcel D was acquired by the plaintiffs almost two years after the enactment of the zoning ordinance with full knowledge that the land was restricted for use and should therefore take subject to such use; (4) The basic principle of zoning is the gradual elimination of nonconforming uses. Defendant contends those reasons are sufficient to restrict the plaintiffs to only that property actually being excavated prior to the 1957 ordinance.

■ The defendant's statement as to the prior use of Parcel D is incorrect. The record supports the trial court's finding that it was an integral part of the gravel operation prior to and after 1957. It was not disputed that the area contained many haul roads connecting it with the other property. Parcel D was also used for stock-piling sand and gravel removed from other parcels. Mr. Gibbs, the prior owner of parcel D, testified that there had been sand and gravel removed from that area prior to 1957. He testified that just prior to the enactment of the 1957 zoning ordinance, he negotiated both with the State Road Commission and the Tiago Construction Company for the removal of large amounts of fill from parcel D. Contrary to defendant's contention, Gibbs testified that it was his intent to continue the gravel operations over onto parcel D. It was stated that the Tiago project resulted in removal of almost two million yards of gravel on parcel D. It was just after the termination of that operation that plaintiffs bought the property. Defendant seems disturbed over the fact that plaintiffs acquired the parcel after the 1957 ordinance went into effect. We are not sympathetic to that position since use, not ownership, of the land is the concern of the zoning authorities. Lawful existing nonconforming uses are not eradicated by a mere change in ownership. The very nature and use of an extractive business contemplates the continuance of such use of the entire parcel of land without limitation or restriction to the immediate area excavated at the time the ordinance was passed. A gravel operation has value only in the place where the resources are found. The rock must be quarried at the site where it exists, or not at all. Thus the entire tract is generally regarded as within the exemption of an existing nonconforming use, although the entire tract is not so used at the time of the passage or effective date of the zoning ordinance. McCaslin v. City of Monterey Park, supra; County of DuPage v. Gary-Wheaton Bank, 42 Ill.App.2d 299, 192 N.E.2d 311 (1963); 58 Am.Jur. p. 1023, § 151; 8A McQuillin Municipal Corporations, 3d Edition 791, Zoning 25.208.

In Hawkins v. Talbot, 248 Minn. 549, 80 N.W.2d 863 (1957), the defendant had been removing sand and gravel from his property when the city adopted an ordinance zoning the property as residential. The ordinance permitted the continuance of nonconforming uses, but provided that no such nonconforming use could be enlarged, increased, or extended to occupy a greater area than occupied by such use at the time of the adoption of the ordinance. The trial court refused to enjoin the operation of the gravel pit and the Supreme Court on appeal affirmed, observing that:

" * * * in the case of a diminishing asset, to mean all of that part of the owner's land which contains the particular asset, and not merely that area in

which operations were actually being conducted at the time of the adoption of the ordinance."

In applying the above principles to the facts in the present case we conclude the trial court correctly found that plaintiffs' use of parcel D was a valid nonconforming use and not an extension thereof.

The trial court ruled that the 1961 amended ordinance was invalid and unconstitutional. Since the defendant in its brief stated that the 1961 ordinance was not involved in this appeal we express no opinion in that regard.

The defendant next contends the trial court erred by not enforcing Excavation Ordinance No. 60 and declaring the following provisions of that ordinance unconstitutional, with respect to the properties of the plaintiffs, under the equal protection and due process clauses of the state and federal constitutions: (1) The requirement that the applicant restrict his excavation to areas at least 200 feet from the boundaries (without regard to ownership of the adjoining land); (2) the requirement that the applicant furnish maps with 5-foot contours; (3) the requirement that the applicant furnish a detailed rehabilitation plan prior to the time at which the character of the ground underlying the mineral is known; (4) the permission given to the city council and building inspector to approve or disapprove rehabilitation plans and fix amounts of bonds without adequate standards having been established.

The defendant claims it enacted the ordinance to protect its citizens from unsightly pits, floods, and other dangers arising from a possible failure to excavate properly. Defendant argues that since it was in the public interest neither this court nor the trial court has the right to question the validity of the police power.

■ We disagree with the defendant's contention. The police power conferred upon this municipality must be exercised to provide for the safety, promote the general welfare, or to preserve the health of that community. Utah Code Ann. § 10–8–84 (1953). Under that power the City of North Salt Lake enacted this excavation ordinance. This excavation ordinance must be examined differently than the zoning ordinance since it is a safety ordinance and nonconforming uses giving owners more freedom from such regulation cannot be established. In a similar situation the Supreme Court of the United States set down the standards to follow when examining an excavation ordinance. In Goldblatt v. Town of Hempstead, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962), the town went through a series of steps in an effort to regulate mining excavation within its limits. The town first sought an injunction against

further excavation on the ground it was violative of a zoning ordinance. This failed because the appellants were found to be conducting a prior nonconforming use on the premises. The town then amended its excavation ordinance so as to prohibit the appellant from any excavation below a certain water table. The Supreme Court affirmed the holdings of the state courts upholding the validity of the police power. The Court stated that the fact the ordinance deprived the property of its most beneficial use did not render it unconstitutional provided it was a valid exercise of the town's police power. In analyzing the ordinance the court stated:

"The ordinance in question was passed as a safety measure, and the town is attempting to uphold it on that basis. To evaluate its reasonableness we therefore need to know such things as the nature of the menace against which it will protect, the availability and effectiveness of other less drastic protective steps, and the loss which appellants will suffer from the imposition of the ordinance."

The court upheld the exercise of the police power on the ground that the appellant had the burden of showing the ordinance was not reasonable and "the evidence produced" by him was "clearly indecisive on the reasonableness of prohibiting further excavation."

In applying the above approach to the facts in this case we agree with the trial court's decision denying enforcement to the previously referred to provisions of the excavation ordinance. The respondents have clearly sustained their burden in overcoming the presumption of reasonableness which is with the State in the exercise of the police power. The record is vacant of any reasonable evidence to show the possible menace against which these specific provisions will protect. The defendant concedes in its brief that the requirement restricting excavation to areas 200 feet from the boundaries without regard to ownership of the adjoining land is unreasonable. The record shows that requiring plaintiff to furnish maps with 5-foot contours, would be too costly and would be more prohibitory than regulatory. The record shows that it would be an unreasonable burden on the applicant here to submit detailed rehabilitation plans because prior to excavation it is almost impossible to determine where the gravel deposits lie. The record also shows that certain provisions of the ordinance leave much discretion in the building inspector and the city council to approve or disapprove permits and to set the amount of bond or other financial guarantees sufficient to insure compliance with the rehabilitation requirements. There is evidence in the record showing that these provisions have not been enforced equally. The record shows that no other operators have been required to obtain permits for excavation operations. In fact, prior to this suit the

plaintiffs were the only operators to apply for a permit.

The plaintiffs here contend and the trial court held that such provisions leaving broad discretion in the city council and building inspector are without adequate guidelines and should therefore be struck down as an unconstitutional delegation of the town's police power. We agree that those provisions as they apply to the facts in this case are unreasonable and should not be enforced, but not upon the ground that they are an unconstitutional delegation of power. We hesitate to hold the provisions of the ordinance completely invalid as they might apply to other fact situations since this excavation ordinance illustrates an example where it is impossible or impractical to lay down standards without destroying flexibility necessary to enable the town to carry out the legislative intent. In this case adequate standards must be considered in light of the inherent uncertainties of the subject matter. We find less need to invoke the delegation doctrine in this case where the state has conferred upon this city the power to make ordinances necessary to protect the health, morals and safety of the community, since our concept of representative government is satisfied where the city council who has received the delegation is an elected body. That is the nature of home rule.

We affirm the trial court's decision with modifications consistent with this opinion. Costs to respondents.

CROCKETT, C. J., HENRIOD, TUCKETT and ELLETT, JJ., concur.