**Q. Ford WILSON and Marilee W. Wilson, et al., Plaintiffs and Appellants,**

v.

**Alan B. MANNING, City Recorder, City of Fruit Heights, Defendant and Respondent.**

**No. 18541.**

Supreme Court of Utah.

Oct. 27, 1982.

Curtis J. Drake, Salt Lake City, for plaintiffs and appellants.

D. Kent Norton, Salt Lake City, for defendant and respondent.

OAKS, Justice:

In *Bird v. Sorenson,* 16 Utah 2d 1, 394 P.2d 808 (1964), this Court held unanimously that a city ordinance rezoning properties from residential to commercial was not subject to referendum. The issue in this case, on virtually identical facts, is whether that decision should be followed or overruled.

The City of Fruit Heights, whose area is 1.92 square miles and whose population is approximately 2,760, has a single page "Masterplan & Zoning Map" approved February 14, 1980. This document, which consists of a map with symbols and legend but no explanatory text, is the City's master plan for zoning. On June 3, 1980, the City Council, acting at the instance of a commercial real estate developer who desired to erect a shopping center, and on a favorable recommendation from its planning commission, adopted an ordinance rezoning ten acres of property. This property, which abuts Highway 89 in the northern part of the City, was rezoned from "residential suburban (12,000 sq. ft. lots min.)" to "commercial highway."

Appellants, whose homes are located within a quarter mile of the property, thereupon presented the City Council with

a timely referendum petition containing the required number of verified signatures, but the City Council refused to allow the petition to be submitted to a referendum vote. Appellants sought a writ of mandamus to compel respondent, the City Recorder, to submit the ordinance to a vote. The district court dismissed the petition on the authority of *Bird v. Sorenson, supra,* and this appeal followed.[1] Citing changes in the trend of case law and important policy arguments in favor of increased public participation in land use decision making, *see, e.g.,* Note, "The Proper Use of Referenda in Rezoning," 29 *Stan.L.Rev.* 819 (1977), appellants urge us to overrule *Bird v. Sorenson* and permit the referendum.

The annotation, "Adoption of Zoning Ordinance or Amendment Thereto as Subject of Referendum," 72 A.L.R.3d 1030 (1976), is useful in analyzing the plethora of cases on various aspects of this subject. It makes clear that the question posed here turns on a construction of the disparate provisions of the constitutions and statutes of the various states. In this area, judicial opinions from other states have limited value as precedents, except insofar as they identify the public policy considerations that illuminate constitutional and statutory construction. On the one hand, the public policy underlying the right to a voter referendum would apply that right to almost all government actions that affect citizens in vital areas of concern, including the enactment and change of zoning laws and ordinances. On the other hand, the importance of professional expertise and community-wide perspective in zoning matters, given effect in common requirements for public hearings, planning commission recommendations, and the establishment of comprehensive plans, weighs against the piecemeal changes that can result from allowing voters to veto zoning actions by referenda. Whatever the merit of these contrasting policies, they are not applied in the abstract, but against the background of the various constitutional provisions and statutes each state has adopted on the subjects of zoning and referendum.

Article VI, § 1 of our Constitution provides that a fraction of the voters of any legal subdivision of the state, as provided by law, "may require any law or ordinance passed by the law making body of said legal subdivision to be submitted to the voters thereof before such law or ordinance shall take effect." Similar language has been enacted in our statutes. U.C.A., 1953, § 20–11–21. The meaning of this guarantee was definitively construed in *Keigley v. Bench,* 97 Utah 69, 89 P.2d 480 (1939), and *Shriver v. Bench,* 6 Utah 2d 329, 313 P.2d 475 (1957).

In *Keigley,* the Court rejected the argument that the right to a referendum applied to all ordinances enacted by the city. Relying on the participial phrase, the Court held that the entire provision "clearly expresses the intention to limit the referendum to the acts of the governing body performed in the execution of its function as a 'law making' body." That is, the referendum statute was meant *"to apply only to laws, ordinances, resolutions or motions which are legislative in character."* 97 Utah at 75–76, 89 P.2d at 483 (emphasis added). This qualification was doubtless made necessary by the fact that some lawmaking bodies, like the city commission in the *Keigley* case, act in an executive or administrative as well as a legislative capacity.

In *Keigley,* the city commission had adopted an ordinance authorizing the issuance of bonds to finance a municipal power system, and that ordinance had been approved by the voters in a referendum. Later, the commission amended the bonding ordinance, and voters sought to submit the amendments to a referendum. In ordering the second referendum, the Court gave this explanation of the determinative test:

> Does the later ordinance make a new law or execute one already in existence? The answer to the question should, we think, be sought by inquiring whether such changes may reasonably be viewed as

1. For an earlier opinion in this same case, involving a defect in the perfection of the appeal

(now cured), see *Wilson v. Manning,* Utah, 645 P.2d 655 (1982).

clearly within the ambit of the voters' intention when the original ordinance was adopted by them.

\* \* \* \* \* \*

... If it is clearly deducible that the variation is pursuant to the intended purpose and policy expressed by the voters then such variation is administrative; if not, then it is to that extent legislative.

97 Utah at 78–79, 89 P.2d at 484. This same principle is applicable to amendments to original laws or ordinances not "adopted" by the voters in a referendum. In that event, the governing consideration is the "intended purpose and policy" expressed by the enacting authority, as disclosed in the terms of its enactment and any other acceptable evidence of intent.

The *Keigley* case was reaffirmed and applied in *Shriver v. Bench, supra,* which held that an ordinance fixing salaries for police and fire personnel was administrative and not subject to referendum. In making that classification, the Court relied on the fact that the fixing of salaries "presents a problem of such complexity that it is not practical for the public to give it sufficient time and attention to make a proper determination of the matter," 6 Utah 2d at 333, 313 P.2d at 478, and, further, that the need for continual changes in salaries made it highly desirable to have an expeditious means of decision making. After citing these considerations as "practical exigencies of the operation of city government," the Court explained:

This is one of the bases of reasoning relied on by the courts in passing on whether a proposed action is legislative or administrative. If the result would be to impair the efficient administration of the municipality, the courts tend toward the conclusion that initiative and referendum provisions are not applicable.

*Id.* Cf. *Riverton Citizens for Constitutional Government v. Beckstead,* Utah, 631 P.2d 885 (1981) (requiring strict compliance with referendum procedures to avoid superseding lawmaking power of governmental unit). The *Shriver* decision did not deprive the voters of control over basic policy making, the Court concluded. It only compelled them to work their will through their elected representatives:

It entrusts to those who are given that duty under the charter the responsibility of either functioning in accordance with the will of the electorate or being held accountable at the next election.

6 Utah 2d at 335, 313 P.2d at 479.

■ How do the foregoing principles apply to zoning ordinances? This Court has frequently stated that the enactment of zoning laws and ordinances is the exercise of a legislative function. *Gayland v. Salt Lake County,* 11 Utah 2d 307, 310, 358 P.2d 633, 635 (1961); *Dowse v. Salt Lake City Corp.,* 123 Utah 107, 110, 255 P.2d 723, 724 (1953); *Walton v. Tracy Loan & Trust Co.,* 97 Utah 249, 253, 92 P.2d 724, 726 (1939). Consequently, the original enactment of a zoning ordinance would generally be subject to referendum.[2] However, ordinances implementing the basic zoning enactment, such as by exceptions and variances, would generally be administrative acts not subject to referendum. *Walton v. Tracy Loan & Trust Co.,* 97 Utah at 259, 92 P.2d at 728–29. Cf. *Thurston v. Cache County,* Utah, 626 P.2d 440, 446 (1981). The question before us falls between these two extremes.

*Bird v. Sorenson, supra,* our only decision on the applicability of referendum to

2. *Dewey v. Doxey-Layton Realty Co.,* 3 Utah 2d 1, 277 P.2d 805 (1954), which held that voters could not rezone a tract of land by *initiative,* is not to the contrary. There the Court held that the procedural requirements applicable to the enactment of zoning ordinances and changes limited the availability of direct legislation by initiative. Specifically, the requirement that the exercise of municipal zoning authority be preceded by notice and public hearing prevented voters (who could not proceed in this manner) from initiating rezoning. Most courts agree. *Annot.,* 72 A.L.R.3d 993 (1976). This rationale does not apply to *referendum,* however, since in that circumstance the proponents of the direct legislation do not seek to initiate and secure the *adoption* of their own new measure, but rather to secure a *veto* to the measures enacted (presumably pursuant to the required notice and hearing) by the lawmaking authority.

amendments to a zoning ordinance, phrases the determinative question as whether the amendment "was administrative or legislative." Relying principally on *Keigley* and *Shriver,* we held in *Bird v. Sorenson* that the changes of zoning from residential to commercial in that case were "administrative acts." Although the opinion is not lengthy, its reliance upon these authorities and their relevance to the issue before the Court is unmistakable. The Court's special reliance upon the need for "efficient administration of the municipality," cited in *Shriver, supra,* is also evident from this sentence in the *Bird v. Sorenson* opinion: "If each change in a zoning classification were to be submitted to a vote of the city electors, any master plan would be rendered inoperative." 16 Utah 2d at 2, 394 P.2d at 808.

■ Although other states (perhaps a discernible trend or even a majority) admittedly have decisions to the contrary of *Bird v. Sorenson* on zoning amendments as administrative acts, *see* Annot., 72 A.L.R.3d 1030 (1976), there are other cases supporting its reasoning. *E.g., Leonard v. City of Bothell,* 87 Wash.2d 847, 557 P.2d 1306 (1976). *Bird v. Sorenson* is, in any event, a reasoned determination persuasively based on prior Utah authorities and, in its own right, now embedded in the law of this state for many years. Such precedents should not be overruled except for the most compelling reasons, which are lacking here. We therefore reaffirm the rule in *Bird v. Sorenson, supra.*

This ruling does not mean that an amendment to a zoning ordinance can never be the subject of a referendum. Some amendments can constitute such a material variation from the basic zoning law of the governmental unit as to constitute, in effect, the making of a new law rather than merely, as this Court said in *Bird v. Sorenson,* "implementing the comprehensive plan and adjusting it to current conditions." 16 Utah 2d at 2, 394 P.2d at 808. But the effort to characterize this amendment as such a variation is unavailing. Appellants' brief refers to the rezoning of this ten acres as "a basic departure from the [City's] con-templated zoning policy" to "de-emphasize commercial establishments along the length of Highway 89," but there is no evidence of such a policy in the "Masterplan & Zoning Map," in the stipulated facts, in appellants' complaint, or elsewhere in the record.

■ Nor does this decision leave those who oppose zoning changes which are not subject to referendum without a remedy apart from the political one cited in *Shriver.* County and city zoning ordinances can be set aside in the courts if they are confiscatory, discriminatory, arbitrary, capricious, or otherwise without basis in reason. *Gibbons & Reed Co. v. North Salt Lake City,* 19 Utah 2d 329, 431 P.2d 559 (1967). Cases stating but not applying this rule include: *Thurston v. Cache County,* 626 P.2d at 444–45; *Naylor v. Salt Lake City Corp.,* 17 Utah 2d 300, 302, 410 P.2d 764, 765–66 (1966); *Naylor v. Salt Lake City Corp.,* 16 Utah 2d 192, 398 P.2d 27 (1965); *Gayland v. Salt Lake County,* 11 Utah 2d at 311, 358 P.2d at 636; *Phi Kappa Iota Fraternity v. Salt Lake City,* 116 Utah 536, 212 P.2d 177 (1949); *Dowse v. Salt Lake City Corp.,* 123 Utah at 110–11, 255 P.2d at 724. One way to make that showing, under these authorities, is to demonstrate that the amendment runs counter to the terms of or the policy established in the underlying law or ordinance or the zoning master plan. *Cf.* U.C.A., 1953, § 10–9–3 (zoning regulations must be in accordance with master plan), § 10–9–12(3) (board of adjustment variances must not "substantially affect" the comprehensive plan), § 10–9–21 (city streets, parks, or other public spaces must conform to master plan).

The judgment dismissing the petition is affirmed. Costs to respondent.

HALL, C.J., and STEWART, JJ., concur.

HOWE, Justice (dissenting):

I dissent. I believe that we should overrule *Bird v. Sorenson,* 16 Utah 2d 1, 394 P.2d 808 (1964) because it is out of harmony with all other Utah cases on the subject, conflicts with pertinent statutes and has created an unexplainable dichotomy in our law.

The majority opinion perpetuates a paradox in Utah law which was introduced by this Court's decision in *Bird v. Sorenson,* supra. Prior to the decision of that case, this Court had held in two clear decisions that where a landowner makes a request to have a city or county commission amend its zoning ordinances so as to permit a different use of his land, the commission exercises its legislative powers in making that decision. Hence the wisdom of the request is a matter which is highly discretionary with the commission, and only if its action is confiscatory, discriminatory or arbitrary will a court of law intervene and set aside its action. *Dowse v. Salt Lake City Corp.,* 123 Utah 107, 255 P.2d 723 (1953); *Gayland v. Salt Lake County,* 11 Utah 2d 307, 358 P.2d 633 (1961). It was emphasized in the latter case that the making of a zoning change is so much a legislative function and therefore discretionary that the commission in making its decision is not confined to the information presented at the public hearing before the commission but members of the commission may, like legislators, draw upon their general knowledge of

> the various conditions and activities in the county bearing on the question of proper zoning, such as the location of businesses, schools, roads and traffic conditions, growth in population and housing, the capacity of utilities, the existing classification of surrounding property, and the effect that the proposed reclassification may have on these things and upon the general orderly development of the county. In performing their duty it is both their privilege and obligation to take into consideration their own knowledge of such matters, and also to gather available pertinent information from all possible sources and give consideration to it in making their determination.

However, when the landowner in *Bird v. Sorenson,* supra, came to this Court seeking a referendum vote on what we had firmly declared to be a legislative act (a zoning ordinance amendment), he heard a different sound. This Court announced that the amendment of a master zoning ordinance changing the zoning of certain property from residential to commercial use by a city council was an administrative act and not legislative. The only explanation was offered in the following three terse sentences: "We so hold, based upon logic and prior decisions of this Court. [Citing *Keigley v. Bench,* 97 Utah 69, 89 P.2d 480, 122 A.L.R. 756 (1939); *Shriver v. Bench,* 6 Utah 2d 329, 313 P.2d 475 (1957); see also: *Kelley v. John,* 162 Neb. 319, 75 N.W.2d 713 (1956), and 5 Utah L.Rev. 413 (1957).] If each change in a zoning classification were to be submitted to a vote of the city electors, any master plan would be rendered inoperative. Such changes are administrative acts implementing the comprehensive plan and adjusting it to current conditions." *Dowse v. Salt Lake City Corp.,* supra, and *Gayland v. Salt Lake County,* supra, were not discussed nor even cited.

Actually, the prior decisions of this Court cited in *Bird v. Sorenson* do not support its conclusion. In *Keigley v. Bench,* supra, the voters of the city had approved an ordinance authorizing a bond issue for the construction of an electrical system. A later ordinance adopted by the City Commission changed the financial plan, resulting in stretching payment of the bonds over 20 years and 18 annual payments of principal instead of 15 years with 13 annual payments, as approved by the voters. We held that this subsequent ordinance was legislative in character and was subject to referendum. We there explained that if the later ordinance varies in a material way from the terms of the earlier ordinance, there is the right to have the variance referred. We further explained that whether there was a right to a referendum depended on the question of whether the later ordinance made a new law or was intended to execute one already in existence; this question was to be resolved by inquiring whether such changes might reasonably be viewed as clearly within the ambit of the voters' intention when the original ordinance was adopted by them. I fail to see how the decision in that case in any way supports the result reached in *Bird v. Sorenson* since a re-zoning of property from

residential to commercial by its very nature constitutes a material change and the change was not within the contemplation of the lawmaking body when the master plan was adopted by ordinance.

In the other Utah case relied upon in *Bird v. Sorenson, Shriver v. Bench,* supra, we held that the setting of salaries for policemen and firemen was an administrative function and thus not subject to referendum. That case does not support *Bird v. Sorenson* since salaries were set through the actions of administrative officials and went into effect without any action of the lawmaking council of the city. That is not so with changing the zoning of property.

This Court in *Bird v. Sorenson* also ignored an earlier pertinent decision of this Court on the subject. In *Walton v. Tracy Loan and Trust Co.,* 97 Utah 249, 92 P.2d 724 (1939) this Court held that the authorizing of a non-conforming use (a corner gasoline station) in contravention of a city zoning ordinance was a legislative act, and that such authorization could be given only by the legislative body of the city and could not be delegated to a board of adjustment. It would seem that if the making of a single exception so as to permit a non-conforming use on a street corner is a legislative act, then the amendment of a zoning ordinance to allow a ten acre shopping development would also be a legislative act as in the instant case.

It is to be further noted that *Kelley v. John,* supra, a Nebraska case relied upon by this Court in *Bird v. Sorenson,* was overruled early this year in *Copple v. City of Lincoln,* 210 Neb. 504, 315 N.W.2d 628 (1982) insofar as it held that an amendment to a zoning ordinance was an administrative or executive act. Ohio and Minnesota in recent years have ruled amendments to zoning ordinances to be legislative acts. *Forest City Enterprises, Inc. v. City of Eastlake,* 41 Ohio St.2d 187, 324 N.E.2d 740 (1975); *Denney v. City of Duluth,* 295 Minn. 22, 202 N.W.2d 892 (1972), the latter case rejecting *Kelley v. John.*

This Court in *Bird v. Sorenson* further justified its holding because "If each change in a zoning classification were to be submitted to a vote of the city electors, any master plan would be rendered inoperative." That sentence is not clear to me since no one has suggested in any of the reported cases that "each change in a zoning classification" had to be or should be submitted to a vote of the city electors. It will be only in a very few instances where aggrieved landowners or citizens will go to the expense and effort of obtaining a referendum. Since zoning changes usually only affect a relatively small area of property and only a relatively small number of people, the governing board and administration should be able to defend their action against attacks by such minor interests. If, however, a majority of the voters reverse the action of the city or county lawmaking body, so it be—the voice of the people has been heard. Government, after all, belongs to the people it serves.

The last sentence in the opinion in *Bird v. Sorenson,* in justification of the decision there reached, states: "Such changes are administrative acts implementing the comprehensive plan and adjusting it to current conditions." I fail to understand how an amendment to a zoning ordinance which changes the zoning for certain property from residential to commercial, or vice versa, is an implementation of the comprehensive plan. Changes which persons have sought in zoning ordinances which have been brought before this Court, *Dowse v. Salt Lake City Corp.,* supra, *Gayland v. Salt Lake County,* supra, and now this case, all involved major deviations from the master plan, not implementations. I have no quarrel that a zoning change may be an adjustment to current conditions, but if it is done by rezoning property to an entirely different use that certainly is a legislative act.

*Bird v. Sorenson* also is in conflict with U.C.A.1953, § 10–9–5 relating to the enactment and amendment of the zoning ordinance of cities and towns in this state. It provides:

Before enacting the zoning ordinance, the *legislative body* shall hold a public hearing thereon ... The zoning ordinance,

including the maps, *may be amended* from time to time by the *legislative body* after 15 days' notice and public hearing; but all proposed amendments shall be first submitted to the planning commission for its recommendation which shall be returned to the *legislative body* for its consideration within 30 days. (Italics added.)

That statute appears to be a clear recognition by the legislature that the enactment of an amendment of a city zoning ordinance is a legislative act. Furthermore, § 10–3–701 provides:

Except as otherwise specifically provided, the governing body of each municipality shall exercise its legislative powers through ordinances.

In conclusion, our decision in *Bird v. Sorenson* rests upon faulty underpinnings. The majority opinion recognizes that a majority of jurisdictions have decisions contrary to ours, but in a valiant attempt to save the decision in the name of stare decisis lauds it as "a reasoned determination persuasively based on prior Utah authorities." That praise is undeserved. It is neither "reasoned," "persuasive" nor "based on prior Utah authorities." It is in disharmony with every other Utah case on the subject including our most recent pronouncement, *Crestview-Holladay Homeowners Assn. v. Engh Floral,* Utah, 545 P.2d 1150 (1976). The majority opinion does not explain how amendments to zoning ordinances can be legislative on one occasion but administrative on another.

The legislative-administrative distinction has been severely criticized as unworkable, 1 Antieau, Municipal Corporation Law, § 4.34, Page 4–62 to 4–65, and one court has labeled the distinction as amorphous. *Durran v. Cassidy,* 104 Cal.Rptr. 793, 28 Cal.App.3d 574, 579 (1972). If this Court is going to continue to cling to the distinction, considerable clarification is needed in its application to zoning ordinances. In past years many cities in Utah have had a commission form of government where a three or five member commission was the city's executive, administrative and legislative body. There was good reason then for inquiring whether one of its acts was done in its administrative or legislative capacity. Today, many cities have adopted the mayor-council form where administrative and legislative duties are divided between a mayor and a council. The two functions have been separated. Acts of the city council, as in the instant case, in amending its zoning ordinance in a material and significant manner, abruptly changing the zoning of ten acres of residential property to permit a shopping development on the city's major highway, in derogation of the city's master plan which had been adopted by ordinance less than four months earlier, is unmistakably a legislative act. The plaintiffs who may sustain a loss in the value of their nearby residential properties and whose comfort may be disturbed by the commercial development, are granted the right to referendum by the Utah Constitution. This Court should not restrict or deny that right by indulging in technical and fine distinctions which are not understandable and do violence to the fabric of the law.

All authorities agree that referendum laws are to be interpreted liberally in favor of the electorate. I would reverse the trial court's ruling and allow this amendment to the zoning ordinance of a city to be submitted to its voters.

DURHAM, J., concurs in the dissenting opinion of HOWE, J.