Janalee S. TOBIAS, Judy A. Feld,
and Brent Foutz, Petitioners,

v.

SOUTH JORDAN CITY RECORDER,
Respondent.

No. 980092.

Supreme Court of Utah.

May 5, 1998.

John D. O'Connell, Sr., Salt Lake City, for petitioners.

Michael Z. Hayes, Lisa G. Romney, Salt Lake City, for respondent.

D. Miles Holman, Jeffrey N. Walker, Sandy, for amicus Anderson Development Company.

HOWE, Chief Justice:

Petitioners seek extraordinary relief from this court to require the City Recorder of South Jordan City to accept their application for copies of a referendum petition to place ordinance 97–20 on an election ballot for voter approval or rejection. The City Council passed ordinance 97–20 on December 16, 1997, which extended the time within which the developer of certain land in the city may satisfy the conditions of ordinance 97–7. The latter ordinance amended the City's zoning map by changing the zoning of the land at issue from A–5, which is an agricultural use, to OS, office service zone. Petitioners assert that the land is open, adjoins the Jordan River, and should be left undeveloped for recreational and wildlife uses.

On January 20, 1998, petitioners, pursuant to Utah Code Ann. § 20A–7–602, filed an application with the City Recorder for copies of a referendum petition which they intended to circulate to gather the required number of signatures of registered voters in the City to place ordinance 97–20 on the ballot for approval or rejection. The Recorder denied petitioners' application on several grounds, one of which was that the request was not timely made. That is the only ground that we need to discuss in this opinion.

Article VI, section 1(2) of the Utah Constitution authorizes the legislature, "under such conditions and in such manner and within such time" as it may provide, to "require any law or ordinance passed by the law making

body of [any] legal subdivision [of this state] to be submitted to the voters thereof" for approval or rejection. Pursuant to that authorization, the legislature in Utah Code Ann. §§ 20A–7–601 to –612 has provided a statutory scheme for local referenda. Sponsors who wish to circulate a referenda petition start the process by filing an application with the "local clerk," who in the case of cities is the city recorder. Section 20A–7–604 directs the local clerk to furnish to the sponsors fives copies of the referendum petition and five signature sheets. The statutes do not expressly provide for a time limit for filing the application. However, section 20A–7–601(2)(a) provides that "[s]ponsors of any referendum petition challenging any local law passed by a local legislative body shall file the petition within thirty-five days after the passage of the local law." After the petition has been filed, any voter who has signed may have his or her signature removed "by submitting a notarized statement to that effect to the local clerk." *Id.* § 20A–7–605. Next, not later than 120 days before any municipal election, the referendum petitions must be delivered to the county clerk for certification that each name on the petition is that of a voter. *See id.* § 20A–7–606. The petitions are then returned to the local clerk who must count the number of names certified by the county clerk and determine if that total number equals or exceeds the number of names required for a referendum. *See id.* § 20A–7–607.

Petitioners contend that it is only the application, not the referendum petition, which must be filed within thirty-five days after the passage of the ordinance. However, it is clear that section 20A–7–601(2)(a) set out above requires the referendum petition to be filed within the thirty-five days. Petitioners argue that the words "referendum petition" in section 20A–7–601(2)(a) is a synonym for "referendum application." We do not agree. Section 20A–7–602 clearly distinguishes between the two, using both terms in the following sentence: "Persons wishing to circulate a referendum petition shall file an application with the local clerk." *Id.* § 20A–7–602(1). That sentence makes it abundantly clear that a referendum petition and the application are separate documents. Peti-

tioners also assert that the petition is not actually filed with the local clerk until after the county clerk certifies that each name on the petition is or is not a registered voter and then delivers the petition back to the local clerk. We disagree. The "filing" with the local clerk necessarily takes place when the signed petition is deposited with the local clerk because he or she may then remove the signature of any voter who has so requested, prior to the delivery of the petition to the county clerk.

We acknowledge that the statutory timetable is extremely short. Sponsors of referendum petitions must move promptly to gather the required number of signatures in thirty-five days after passage of the ordinance. Since the referendum petition, which bears the signatures of registered voters in the city who desire that the ordinance be placed on the ballot, must be filed within thirty-five days after the passage of the local law, the application for copies of the referendum petition must necessarily also be filed within the thirty-five day limit. However, the present timetable is more liberal than the former statutory scheme that we interpreted in *Riverton Citizens for Constitutional Government v. Beckstead,* 631 P.2d 885 (Utah 1981), which required that not only the required number of signatures be obtained within a thirty-day period, but also that the checking of the names by the county clerk also be accomplished in that time period. Petitioners argue that since section 20A–7–601(2)(b) provides that "[t]he local law remains in effect until repealed by the voters via referendum," there is not the urgency to complete the referendum process in a short time as there was under the former statutory scheme where the challenged ordinance was suspended and did not go into effect until it was approved at the election. While that may be true, it is an argument that must be addressed to the legislature which has the constitutional duty to provide for a referendum process. Our duty is to interpret the scheme the legislature has provided, not to vary it.

Moreover, we note that the timetable for local referenda closely comports with the statutes providing for statewide referendum in Utah Code Ann. §§ 20A–7–301 to –312.

Under that statutory scheme, "[p]ersons wishing to circulate a referendum petition [must] file an application with the lieutenant governor within five calendar days after the end of the legislative session" in which the challenged law is passed. *Id.* § 20A–7–302(1). Not later than forty days after the end of the legislative session, "the sponsors [must] deliver [a] signed and verified referendum packet to the county clerk of the county in which the packet was circulated." *Id.* § 20A–7–306(1). Not later than fifty-five days after the end of the legislative session, the county clerk must check all the names of the signers against the official registers to determine whether the signer is a voter. *See id.* § 20A–7–306(3). Here, again, the legislature requires sponsors of a statewide referendum to act with the utmost speed.

■ In the instant case, petitioners did file their application for copies of a referendum petition and signature sheets pursuant to section 20A–7–602 within thirty-five days after the passage of ordinance 97–20. Admittedly, however, they were not prepared to file and did not file the completed petitions that same day. Their petition for extraordinary relief is therefore denied.

We do not reach and therefore express no opinion on other grounds relied upon by the recorder in denying petitioners' application, including that ordinance 97–20 is an "individual property decision," not subject to referendum under section 20A–7–101(7)(b).

Associate Chief Justice DURHAM, Justice STEWART and Justice RUSSON concur in Chief Justice HOWE's opinion.

ZIMMERMAN, Justice, concurring:

I concur in the opinion of Chief Justice Howe. However, I would add a comment on the challengeability of the action of the city council that is under attack, since this matter seems likely to reappear in the courts.

The action challenged is an extension of an earlier ordinance that changed the zoning of a large parcel of land conditioned upon a certain developer's meeting certain conditions by a certain date. Unless those conditions were satisfied by the certain date, the zoning would revert to its previous status. The ordinance before us extended the time for compliance with those conditions.

The city contends that the ordinance is not challengeable by referendum because it is a simple extension of time and the substantive rezoning was accomplished by the earlier ordinance. Therefore, even if the changes in zoning are significant enough to satisfy our case of *Citizen's Awareness Now v. Marakis,* 873 P.2d 1117 (Utah 1994), only the earlier, original ordinance was challengeable by a referendum petition. I cannot agree. The zoning in question was not permanently changed by the earlier ordinance. It was changed only upon the occurrence of certain conditions, and one of those conditions was that certain events had to happen before a specified date. Unless they occurred, the zoning reverted automatically. Therefore, the extension operates to change the zoning from and after the expiration date set in the earlier ordinance. This means that the extension ordinance has the same operative effect as the earlier ordinance. Therefore, I would hold that the extension ordinance is challengeable by referendum if the original ordinance was so challengeable.

To hold otherwise would be to permit a clever local government unit to evade our decision in *Citizen's Awareness Now.* In that decision, we clarified what constitutes a zoning change and held that the cumulative effect of a series of zoning decisions may constitute a single change subject to referendum. 873 P.2d at 1126. If we hold that the extension ordinance is not challengeable, we would thereby create a simple mechanism for local governments to avoid the effect of our ruling in *Citizen's Awareness Now.* That is, by passing a series of rezoning ordinances, each with a different expiration date, and by extending those expiration dates such as in the instant case, a municipality could avoid a voter referendum on any of those changes, whether individually or cumulatively. This would not be a desirable result.

In addition, I would also address the separate question of whether a city recorder has the authority to decline to issue a referendum petition on the grounds that the subject is not one suitable for a referendum. Section 20A–7–604 states that the "local clerk shall

furnish to the sponsors" five copies of the referendum petition and five signature sheets. In this case, however, the clerk did not immediately issue the referendum petition to the sponsors and instead consulted the city attorney to obtain an opinion as to whether this was a suitable matter for a referendum. Seven days later, the city attorney wrote a letter to the city recorder saying it was his opinion that the referendum petitions should not be issued. In my view, the statute makes issuance of a referendum petition an entirely ministerial act, and nothing in the statute authorizes the recorder to make an independent determination of whether that petition should be issued based on whether the subject is suitable for a referendum. Any such determination is inappropriate until after the referendum petition has been completed and returned. As noted in the majority opinion, it is already difficult to succeed in the use of the referendum process due to the shortness of the statutory timetable. We should not allow unauthorized delays by city administrators, those most likely to hope a referendum will fail, to make this process even more difficult.[1]

---

**1.** Although no other member of the court has joined this opinion, I note with optimism that the majority specifically declines to address these two issues and leaves both of these questions open for another day. This should be sufficient to alert members of the bar as to their importance in the next case.