CITIZEN'S AWARENESS NOW, a Utah not-for-profit organization, Plaintiff and Appellant,

v.

Jaylene MARAKIS, East Carbon City Recorder; Paul Clark, Mayor, East Carbon City; Barbara Fisher, Rakele Palmer, Todd MacFarland, Leroy Tharp, and Don McCourt of the East Carbon City Council; Don McCourt, Chairman, East Carbon Planning Commission; and the East Carbon Development Corporation, Defendants and Appellees.

No. 920467.

Supreme Court of Utah.

April 21, 1994.

Kathryn P. Collard, J. Stephen Russell, Salt Lake City, for plaintiff.

Dan C. Keller, Price, for East Carbon City officials.

Alan L. Sullivan, Salt Lake City, and Nick Sampinos, Price, for East Carbon Development Corp.

DURHAM, Justice:

This dispute concerns approximately 2,500 acres of land in East Carbon City (the "ECDC Property"), owned by the East Carbon Development Corporation ("ECDC"), on which ECDC constructed a privately owned multi-million dollar solid-waste disposal facility. Plaintiff Citizen's Awareness Now ("CAN") sought referenda on two zoning change ordinances enacted by the East Carbon City Council (the "City Council") concerning the ECDC property. Defendant Jaylene Marakis, the East Carbon City Recorder, denied the referenda based on the City's determination that the zoning changes constituted individual property zoning decisions and were thus exempt from referenda under section 20–11–24(2)(a)(ii) of the Utah Code. On motion for summary judgment, the Seventh District Court upheld the City's denial of the requested referenda. We reverse and remand.

During the spring of 1989, ECDC and the City Council entered into negotiations regarding ECDC's desire to build a privately owned solid-waste disposal facility on land adjacent to East Carbon City. In exchange for certain economic benefits, ECDC proposed that East Carbon City annex the land and zone it for such a facility. Because East Carbon City's current development code did not permit a privately owned facility, the City Council realized that it would have to amend the city's zoning regulations if it accepted ECDC's proposal.

The City Council began the zoning modification process on July 11, 1989, when it passed resolution 15–89. This resolution stated that the primary purpose for annexing the ECDC property was "to facilitate the establishment and operation of a Solid waste disposal facility." The resolution also acknowledged that "[t]he present City Zoning Ordinance does not permit the establishment of [a privately owned solid-waste disposal facility]" and stated the City's intention to "consider an amendment to its Development Code to allow privately operated solid waste disposal facilities as a permitted use, and to place the [ECDC property] within a zone which permits the establishment of such a use."

The copy of resolution 15–89 provided to this court fails to indicate whether it was officially filed and recorded with the East Carbon City Recorder. The record reflects that the City Council conducted a public hearing regarding the resolution, but the minutes do not reveal whether the public was properly notified of this hearing, whether any interested members of the public actually attended, or whether the City Council publicly discussed the resolution's substantive content.

On July 25, 1989, the City Council passed ordinance 7–25–89, which annexed the ECDC property and zoned the land I–1 Light Industrial. While this ordinance was properly filed and recorded, the City Council seems to have made a significant labeling error. The I–1 zoning category allowed only light manufacturing and nontoxic industrial uses; it did

not permit the development and operation of a privately owned solid-waste disposal facility. The correct zoning designation appears to have been I–2 General Industrial, which permitted such facilities if publicly operated.

Ordinance 7–25–89 is also problematic on other grounds. Although the ordinance annexed and zoned the ECDC property, the City Council neglected to add the land to the city's official zoning map. CAN also alleges, and the City Council does not dispute, that the East Carbon City records contained no certificate of posting for ordinance 7–25–89 until April 9, 1992. In addition, the City Council's minutes for the July 25, 1989, meeting at which they adopted ordinance 7–25–89 state only that the City was annexing the ECDC property but do not reveal the property's intended use. The minutes also refer to an agreement between ECDC and the City concerning the ECDC property, but again do not divulge the content or subject of that agreement.

Ordinance 7–25–89 does indicate that the ECDC property was annexed subject to the terms and conditions set forth in resolution 15–89. However, as explained above, the record does not reveal whether resolution 15–89 was properly filed, posted, or recorded. Thus, neither the minutes of the City Council meeting nor the face of ordinance 7–25–89 gave any indication that the ECDC property would be the site of a privately owned solid-waste disposal facility.

On the same date it passed ordinance 7–25–89, the City Council also purportedly passed ordinance 89–07–25, which adopted extensive amendments to the I–2 General Industrial zoning category. In a nutshell, ordinance 89–07–25 expanded the uses permitted under the I–2 designation to include the development and operation of a *privately owned* solid-waste disposal facility.

However, according to a CAN officer who regularly searched the City's ECDC property files between December 1991 and April 1992, city records do not contain a notice of agenda or public meeting regarding ordinance 89–07–25. Additionally, neither the July 11, 1989, nor the July 25, 1989, Council meeting minutes mention the ordinance. Indeed, CAN alleges, and the City Council does

not dispute, that city records contained neither a certificate of posting nor a notice of ordinance adoption for ordinance 89–07–25 until April 9, 1992. CAN claims that on that date, a certificate of posting for "Ordinance 89–7–25" first appeared in the city files. As of the commencement of this litigation, however, the city files still did not contain a notice of ordinance adoption.

On August 8, 1989, ECDC and the City Council entered into an agreement permitting ECDC to develop and operate its facility. While the minutes of the July 25, 1989, City Council meeting refer to this agreement, they do not divulge its content or subject. Pursuant to this agreement and despite the improper I–1 zoning designation, on October 24, 1989, the City Council issued ECDC a one-year conditional use permit to construct, operate, and maintain a privately owned solid-waste disposal facility on the ECDC property. By the time ECDC began construction on its facility in December 1991, however, the permit had expired.

At some point during the fall of 1991, ECDC allegedly discovered that its property was zoned I–1 Light Industrial rather than I–2 General Industrial and approached the City Council about the discrepancy. On January 28, 1992, the City Council addressed ECDC's concerns by passing ordinance 92–1. Ordinance 92–1 adopted a new zoning map for the city that designated the ECDC property as I–2 General Industrial. On February 11, 1992, the City Council enacted resolution 4–92, which purported to continue and reissue ECDC's expired October 1989 conditional use permit. Resolution 4–92 also reflected ordinance 92–1's redesignation of the ECDC property from I–1 to I–2.

On February 11, CAN petitioned for a referendum on ordinance 92–1. The City Council denied the petition on the ground that ordinance 92–1 constituted an individual property zoning decision under section 20–11–24(2)(a)(ii) of the Utah Code. CAN subsequently sought a writ of mandamus from this court to secure a referendum. The City Council, in turn, passed ordinance 92–4, which again rezoned the ECDC property from I–1 to I–2. When CAN petitioned for a

referendum on ordinance 92–4, the City Council again denied the petition on the ground that the ordinance constituted an individual property zoning decision. CAN then sought a second writ of mandamus to require the City to accept CAN's referendum petition on ordinance 92–4.

This court consolidated the two petitions and remanded them to the district court. Prior to trial, defendants jointly moved for summary judgment. The district court granted the motion, holding that ordinances 92–1 and 92–4 constituted "individual property zoning decisions" and therefore were not subject to referenda under section 20–11–24(2)(a)(ii). CAN brought this appeal.

■ We note at the outset that a challenge to a summary judgment presents for review only questions of law. *See* Utah R.Civ.P. 56(c); *Schurtz v. BMW of N. Am., Inc.,* 814 P.2d 1108, 1111 (Utah 1991). We therefore accord no deference to the trial court's legal conclusions but review them for correctness. *Schurtz,* 814 P.2d at 1112.

The convoluted history of the ordinances upon which CAN seeks referenda raises two important questions. First, what exactly is the zoning "change" at issue in this case? Second, what is the nature and scope of an "individual property zoning decision" under section 20–11–24(2)(a)(ii)? The latter is a question of first impression.

Through a series of resolutions, ordinances, and conditional use permits, the City Council effectively rezoned the ECDC property from a classification permitting only nontoxic uses, such as light manufacturing, to one that specifically sanctioned a privately owned, possibly toxic, solid-waste disposal facility. Thus, ECDC's argument that ordinances 92–1 and 92–4 simply corrected a typographical error in ordinance 7–25–89 is somewhat misleading. The zoning change at issue in this case is not merely a clerical modification, but rather a cumulative change in (1) the content of a particular zoning cate-

gory, and (2) the zoning label given to a particular piece of land.

Moreover, the record indicates that the City Council may have accomplished this zoning change by circumventing the notice and public participation requirements of sections 10–9–303 to –304 and 20–11–24 of the Utah Code. Utah law grants citizens the right to be informed of the current permitted uses of land and of proposed or actual governmental changes in those uses. They also have the right to comment on and, under certain circumstances, negate or affirm those changes via the referendum process. *See* Utah Code Ann. §§ 10–9–303 to –304, 20–11–24. Further, if citizens are dissatisfied with the specific implementation of a zoning plan, they have the option of voting out the leaders who implemented it. *Wilson v. Manning,* 657 P.2d 251, 253 (Utah 1982) (recognizing that voters may control basic policy decisions through the electoral process) (citing *Shriver v. Bench,* 6 Utah 2d 329, 313 P.2d 475, 479 (1957)).[1] However, citizens cannot take advantage of these rights if they are not privy to the activities of their elected representatives. As demonstrated by our recitation of the facts, this record certainly raises some doubt as to whether the City Council permitted sufficient community notice and participation.

In our view, the zoning change at issue began in 1989 when the City Council designated the ECDC property I–1 under ordinance 7–25–89 and resolution 15–89. The change continued with the I–2 amendment under ordinance 89–07–25 and concluded in 1992 with the redesignation of the ECDC property from I–1 to I–2 under ordinances 92–1 and 92–4 and the reissuing of ECDC's conditional use permit under resolution 4–92. These changes were accomplished sequentially but with a cumulative effect and should be considered as a whole. The question remains, however, whether this zoning change warranted referendum under section 20–11–24. Resolving this question requires an anal-

---

1. We note that *Wilson v. Manning,* 657 P.2d 251 (Utah 1982), recognizes an alternative to the political remedy articulated in *Shriver v. Bench,* 6 Utah 2d 329, 313 P.2d 475, 479 (1957). "County and city zoning ordinances [which are not sub-

ject to referenda] can be set aside in the courts if they are confiscatory, discriminatory, arbitrary, capricious, or otherwise without basis in reason." *Wilson,* 657 P.2d at 254.

ysis of section 20–11–24 and its "individual property zoning decisions" exception.

The primary purpose of section 20–11–24 is to establish certain referendum filing standards and procedures. That section states:

(1) Referendum petitions against any ordinance, franchise, or resolution passed by the governing body of a county, city, or town shall be filed with the clerk or recorder within 30 days after the passage of the ordinance, resolution, or franchise.

(2)(a)(i) For purposes of this section, "law or ordinance" includes ordinance, master plans, and comprehensive zoning regulations adopted by ordinance or resolution.

(ii) "Law or ordinance" does not include individual property zoning decisions.

(b) When a referendum petition on any law or ordinance adopted under the authority of Chapter 9, Title 10, or Chapter 22, Title 17, is declared sufficient, the law or ordinance subject to referendum is null and void until voted upon by the qualified voters of the county, city, or town.

(c) If the referendum fails, the law or ordinance is effective as of the date of the election.

Utah Code Ann. § 20–11–24.

■ According to the legislative history of section 20–11–24, subsection (2)(a) was designed to incorporate the "present case law of the [Utah] Supreme Court on the matters of zoning." *See* Floor Debate, vote on S.B. 9, 47th Utah Legis., Gen. Sess. (Feb. 9, 1987) (Senate Recording No. 54, side B) (statement of Sen. Finlinson). The Senate floor debates indicate that the legislature correctly interpreted our case law as drawing a distinction between legislative and administrative zoning matters. *Id.* That is, while legislative zoning matters are subject to referenda, administrative zoning matters are not. *Id.; see Wilson,* 657 P.2d at 253. Subsections (2)(a)(i) and (2)(a)(ii) appear to codify that judicially created distinction. Subsection (2)(a)(i) corresponds to legislative zoning

matters that are subject to referenda, while subsection (2)(a)(ii) refers to administrative zoning matters that are not.

Unfortunately, the legislature's attempt to reconcile section 20–11–24 with our prior case law failed to remedy a shortcoming in that case law. That is, our prior zoning decisions have not described an explicit method for distinguishing between legislative zoning changes (which are now subject to referenda under section 20–11–24(2)(a)(i)) and administrative zoning changes (which are now exempt from referenda under section 20–11–24(2)(a)(ii)).[2]

Zoning changes fall on a continuum between major changes in zoning law, such as the original enactment of zoning ordinances, at one end of the spectrum and simple implementations of zoning plans, such as exceptions and variances, at the other. Whether a particular zoning change amounts to a legislative or an administrative act is easily determined at these extremes. The original enactment of a zoning ordinance is usually legislative and subject to referendum, while the implementation of that ordinance is typically administrative and inappropriate for referendum. *Wilson,* 657 P.2d at 253. In section 20–11–24 terms, the original enactment of a zoning ordinance falls into subsection (2)(a)(i)'s subject-to-referendum category, while the implementation of that ordinance falls into subsection (2)(a)(ii)'s individual-property-zoning-decision exception.

However, when a zoning change falls between these extremes, determining whether it is legislative or administrative in nature is more difficult. Indeed, as the dissent observed in *Wilson,* if we are going to continue to use "the [legislative-administrative] distinction, considerable clarification is needed in its application to zoning ordinances." *Id.* at 257 (Howe & Durham, JJ., dissenting). We attempt today to provide that clarification.

In addition to *Wilson,* 657 P.2d at 253–54, this court has addressed the legislative-administrative distinction in *Bird v. Sorenson,* 16 Utah 2d 1, 394 P.2d 808, 808 (1964) (hold-

---

**2.** Hereinafter the terms "legislative" and "administrative" will be used to refer to the zoning changes contemplated by section 20–11–24(2)(a)(i) and 20–11–24(2)(a)(ii), respectively.

ing ordinance that rezoned property from residential to commercial was administrative in nature and not subject to referendum), *Shriver v. Bench,* 6 Utah 2d 329, 313 P.2d 475, 476–80 (1957) (holding that setting police officers' and firefighters' salaries was administrative in nature and not subject to referendum), and *Keigley v. Bench,* 97 Utah 69, 89 P.2d 480, 482–86 (1939) (holding that issuing bonds to finance construction of municipal electric plant and system was legislative in nature and subject to referendum). Although the results of these cases have been characterized as inconsistent, *Wilson,* 657 P.2d at 254–57 (Howe & Durham, JJ., dissenting), they do follow a fairly constant policy-based line of reasoning. Isolating the various elements of this court's general rationale in these cases provides a standard for determining whether a zoning change is legislative or administrative in nature. These elements are general purpose and policy, material variance, and appropriateness of voter participation. In addition, a threshold procedural requirement of adequate notice is implicit in this prior case law.

The order of analysis assigned to the threshold notice requirement and the three determinative policy elements is important. After concluding that the threshold notice requirement is satisfied, the trial court must then determine whether the disputed zoning change is legislative or administrative in nature. This determination must be undertaken as a sequential process, addressing each policy element in the order and manner identified in this opinion.

### Notice

■ The trial court must consider adequate notice as a threshold matter when petitioners claim that the enacting authority did not give citizens proper notice of the zoning change in question. The rationale behind this procedural requirement is obvious. Voters are statutorily granted the right to be notified of changes and developments in their community's zoning laws. Utah Code Ann. §§ 10–9–303 to –304. Furthermore, if a particular zoning change constitutes a legislative-type change, voters must be given adequate notice of its enactment so that they

may institute referendum procedures promptly. *See* Utah Code Ann. § 20–11–24. *See generally Wilson v. Manning,* 657 P.2d 251, 251–52 (Utah 1982) (zoning dispute arose after timely referendum petition filed); *Bird v. Sorenson,* 16 Utah 2d 1, 394 P.2d 808, 808 (1964) (same).

■ Under this requirement, the trial court must determine if the enacting authority followed the notice and public participation requirements mandated by sections 10–9–303 and –304 of the Utah Code. The trial court should also consider whether the enacting authority provided sufficient notice of the change through proper labeling and an accurate description of the contents of the labels in question. If the notice was inadequate, the trial court must invalidate the zoning change, leaving the enacting authority free to reinstate the proceedings in proper fashion. However, if the trial court concludes that the notice was adequate, it must then determine whether the change was legislative or administrative using the three policy elements.

■ As we have already pointed out, the record in this case raises serious questions as to whether the City Council followed the notice and public participation procedures mandated by sections 10–9–303 and –304. To recapitulate, the record indicates that (1) resolution 15–89 may not have been properly filed, posted, or recorded; (2) ordinance 7–25–89 designated the ECDC property I–1 Light Industrial, a category which did not permit ECDC's proposed use; (3) the City Council originally neglected to add the ECDC property to its official zoning map; (4) a certificate of posting for ordinance 7–25–89 allegedly did not appear in city records until April 9, 1992; (5) the minutes of the July 25, 1989, City Council meeting do not reveal the ECDC property's intended use or the content of the agreement between the City Council and ECDC; (6) city records do not contain a notice of agenda or public meeting regarding ordinance 89–07–25; (7) neither the July 11, 1989, nor the July 25, 1989, Council meeting minutes mention ordinance 89–07–25; (8) city records allegedly did not contain a certificate of posting for ordinance 89–07–25 until April 9, 1992; (9) city records allegedly never contained a no-

tice of ordinance adoption for ordinance 89–07–25; (10) the City Council issued ECDC a conditional use permit to develop and operate its facility on land which was not zoned for such a use; (11) the City Council permitted ECDC to begin construction despite the fact that its arguably invalid conditional use permit had expired; (12) the City Council renewed or reissued ECDC's conditional use permit, despite the fact that the original permit had already expired and may have been invalid in the first place.

Although CAN has made a prima facie case that the notice given in 1989 was inadequate under the standards established by sections 10–9–303 and –304, we note that ECDC may disprove this presumption at trial. For example, ECDC and the City Council might produce enough evidence to convince the fact finder that the documents at issue were properly filed, posted, and recorded and that adequate notice was given.

### General Purpose and Policy

 This element asks whether the newly enacted zoning change falls within the general purpose and policy of the original zoning ordinance. *See Wilson v. Manning,* 657 P.2d 251, 252–53 (Utah 1982) (citing *Keigley v. Bench,* 97 Utah 69, 89 P.2d 480, 484 (1939)). A trial court attempting to determine the general purpose and policy of a particular zoning ordinance may consider a variety of factors, including the plain language of the ordinance, council meeting minutes, the intent of the enacting authority (or voters, if the ordinance was adopted by referendum), and any other reliable and relevant evidence. *See id.* If the zoning change falls within the general purpose and policy of the original ordinance, it constitutes an administrative change and is not subject to referendum. However, if the zoning change does not comport with the general purpose and policy of the original ordinance, a legislative presumption attaches and the trial court must then consider the final two elements, material variance and appropriateness of voter participation.

The general purpose and policy element is perhaps best suited to an analysis addressing a single zoning ordinance and a corresponding amendment to that ordinance. However, the zoning change at issue in this case involves the cumulative effect of a series of resolutions, ordinances, and conditional use permits. Thus, applying this element to the instant case requires some flexibility.

 When applying this element, the trial court must first determine the general purpose and policy of the original I–2 zoning category, which permitted only publicly owned solid-waste disposal facilities. The trial court must next consider whether the *cumulative* result of the zoning change at issue—authorizing the development and operation of a privately owned solid-waste disposal facility—falls within the general purpose and policy of the original I–2 designation. If the ultimate zoning change falls within the general purpose and policy of the original I–2 classification, it amounts to an administrative change and is not subject to referendum. However, if the zoning change does not comport with the general purpose and policy of the original I–2 classification, a legislative presumption attaches and the trial court must then consider the final two policy elements.

### Material Variance

 Though policy driven, the material variance element essentially asks trial courts to make a factual determination as to the magnitude or importance of the disputed zoning change. The trial court must decide whether the zoning change "constitute[s] such a material variation from the basic zoning law of the governmental unit as to constitute ... the making of a new law rather than merely ... 'implementing the comprehensive plan and adjusting it to current conditions.' " *Wilson v. Manning,* 657 P.2d 251, 254 (Utah 1982) (quoting *Bird v. Sorenson,* 16 Utah 2d 1, 394 P.2d 808, 808 (1964)). In other words, even if the trial court finds that the zoning change falls outside the general purpose and policy of the original ordinance, it must still determine whether the change is of sufficient magnitude to constitute a material variance. Thus, a minor change which merely implements the comprehensive plan and adjusts it to current conditions rebuts the legislative

presumption and requires the court to rule that the change was administrative.

### Appropriateness Of Voter Participation

The final element addresses whether the zoning change implicates a policy-making decision amenable to voter control. Under this element, even if the zoning change was not within the general purpose and policy of the original ordinance and even if it amounts to a material variance, the change should nevertheless be ruled administrative if voter participation is inappropriate. One pertinent consideration is whether the change involves a matter " 'of such complexity that it is not practical for the public to give it sufficient time and attention to make a proper determination of the matter.' " *Wilson v. Manning*, 657 P.2d 251, 253 (Utah 1982) (quoting *Shriver v. Bench*, 6 Utah 2d 329, 313 P.2d 475, 478 (1957)). In other words, does the zoning change involve a matter so complex that voters should be required to entrust the decision to their elected representatives?

Another significant consideration under this element is whether the zoning change involves " 'the practical exigencies of the operation of city government.' " *Id.* (quoting *Shriver*, 313 P.2d at 478)). If cities are to function efficiently, citizens must recognize that there are certain governmental areas in which the need for continual change necessitates an expeditious means of decision making. Otherwise, communities will be subject to the undesirable phenomenon of city government by referenda, an inefficient and often arbitrary system that virtually guarantees piecemeal land development. *Id.* 657 P.2d at 252. When contemplating this policy concern, trial courts should consider whether the change was a common, everyday zoning change or a rare or unusual change that will significantly alter the basic nature of the community.

Determining whether voter participation was appropriate or inappropriate in the instant case requires the trial court to consider a variety of factors. For example, was the zoning change too complex for East Carbon City citizens to devote the time and attention necessary for a meaningful referendum? Did the change involve the practical exigencies of city government? Was the zoning change a common, everyday decision, or would it significantly alter the basic nature of the community? While it is certainly arguable that the citizens of East Carbon City are best qualified to determine whether to share their community with a privately owned solid-waste disposal facility, these questions require a full hearing and determination by the trial court in accord with the above-described analysis.

In sum, the sequential decision-making process we announce today requires trial courts to proceed in the following manner. As a threshold matter, the trial court must first determine whether the enacting authority provided the community with adequate notice of the zoning change at issue. If the notice was inadequate, the zoning change must be invalidated, leaving the enacting authority free to reinstate proceedings in proper fashion. However, if the notice was adequate, the trial court must then determine whether the zoning change was legislative or administrative. In doing so, the court must first determine whether the change falls within the general purpose and policy of the original ordinance. If so, the change is administrative and not subject to referendum. However, if the zoning change falls outside of the general purpose and policy of the original ordinance, a legislative presumption attaches and the trial court must then consider the final two elements—material variance and appropriateness of voter participation.

Whether a zoning change amounts to a material variance is essentially a factual determination involving the magnitude or importance of the change at issue. If the zoning change does not constitute a material variance, the legislative presumption is rebutted and the change is merely administrative. However, if the zoning change does amount to a material variance, the trial court must then determine whether this particular variance, even though outside the general purpose and policy underlying the original ordinance, nevertheless involves an area that should not be subject to voter control. If the court determines that voter participation is *inappropriate*, the zoning change is administrative in nature; conversely, if the court

determines that voter participation is *appropriate,* the zoning change is legislative in nature and subject to referendum.

In conclusion, we hold that the zoning change at issue in this case is comprised of the cumulative operation of resolution 15–89, ordinance 7–25–89, ordinance 89–07–25, ECDC's original conditional use permit, ordinance 92–1, ordinance 92–4, and resolution 4–92. It was improper for the trial court to hold as a matter of law that this change constituted an individual property zoning decision under section 20–11–24(2)(a)(ii) of the Utah Code. We therefore reverse the summary judgment entered below and direct the trial court to determine whether the zoning change at issue constitutes a legislative-type change subject to review by referendum under section 20–11–24(2)(a)(i) or an administrative-type change exempt from referendum under section 20–11–24(2)(a)(ii).

ZIMMERMAN, C.J., and STEWART and HALL, JJ., concur.

HALL, J., acted on this case prior to his retirement.

HOWE, Justice, dissenting:

I dissent. I do not agree with the analysis made in the majority opinion which widely strays from what I perceive is the issue in this case.

Utah Code Ann. § 20–11–21 provides in part:

(1) Subject to the provisions of this chapter, the legal voters of any county, city, or town, in numbers required by this chapter, ... may require *any law or ordinance* passed by the governing body of the county, city, or town to be submitted to the voters before the *law or ordinance* takes effect.

(Emphasis added.) Section 20–11–24(1) provides that petitions seeking referendum must be filed with the city recorder within thirty days after the passage of the "ordinance, resolution or franchise." The 1987 amendment to this section added subsection (2), which provides in part:

(2)(a)(i) For purposes of this section, "law or ordinance" includes ordinance, master plans, and comprehensive zoning regulations adopted by ordinance or resolution.

(ii) "Law or ordinance" does not include individual property zoning decisions.

My difficulty with the majority decision is that it does not focus on any certain ordinance or resolution but considers all action by the City Council from 1989 to January 1992 as one zoning change which may be subject to referendum. The majority writes:

These changes were accomplished sequentially but with a cumulative effect and should be considered as a whole. The question remains, however, whether this zoning change warranted referendum under section 20–11–24.

It is the legislative intent in sections 20–11–21 and –24 that referendum must be sought with regard to a specific ordinance or resolution and not with regard to a series of ordinances or resolutions which may have been adopted on the same subject over a period of years. The requirement that referendum must be petitioned for within thirty days after the passage of the ordinance or resolution would seem to foreclose the possibility of considering several of them "as a whole," as the majority does, and then allowing referenda on all or any one of them if it is timely sought on the last ordinance adopted. Referendum is simply not authorized on a "zoning change" comprised of the "cumulative operation" of four ordinances, two resolutions, and a conditional use permit adopted over the space of three years.

CAN sought referenda only on ordinances 92–1 and 92–4, the last to be adopted. I believe the trial court was correct in upholding the refusal of the City Recorder to accept the petitions because she determined that the ordinances were "individual property decisions" within the meaning of section 20–11–24. It was the legislative intent in this regard to exempt from referendum zoning changes on specific property, as was the case in *Wilson v. Manning,* 657 P.2d 251 (Utah 1982) (from residential to commercial), and in the instant case (from I–1 to I–2). I do not think that the amount of acreage of the property rezoned is relevant (here it was

2,400 acres) or that the property is described in more than one legal description because it consists of more than one parcel. I agree with appellees that when a city applies a preexisting zoning classification to one or more parcels of land held in common ownership, as was done here, it is an "individual property zoning decision."

However, ordinance 89–07–25, adopted in 1989, which expanded the uses permitted under the I–2 zoning classification to include the operation of a privately owned solid-waste disposal facility, was not an "individual property zoning decision" because it was not limited to any specific or individual property but added an entirely new permissible use of property in the city. But no referendum was sought on that ordinance, and it cannot now be obtained indirectly through referendum on ordinance 92–1 or 92–4.

CAN contends that under article VI, section 1 of the Utah Constitution, individual property zoning decisions may not be exempted by the legislature from the right of the electorate to call for referendum. Notwithstanding the views expressed in my dissenting opinion in *Wilson v. Manning*, I conclude that this issue was not adequately raised in the district court, and we cannot entertain it for the first time on appeal.

The majority opinion raises questions concerning the validity of the procedures in the adoption of some of the ordinances because of lack of *notice, posting, recording,* etc. None of those questions were raised by CAN in the trial court or on appeal and are not now before us. Whether they might be raised in a subsequent suit which directly challenges the validity of the adoption of any ordinance is also outside the scope of this appeal.

I would affirm the district court.