2004 UT 90

**Robert LOW, Joel Palmer, Julia Redd, Albert Steele, Plaintiffs and Appellants,**

v.

**CITY OF MONTICELLO, K. Dale Black, Douglas Allen, Julie Bronson, Kim Burtenshaw, Clyde Christensen, Evan Lowry, C. Trent Schaffer, Defendants and Appellees.**

No. 20030499.

Supreme Court of Utah.

Nov. 2, 2004.

R. Brent Stephens, Heather S. White, Salt Lake City, for plaintiffs.

Randy T. Austin, Matthew K. Richards, Salt Lake City, for defendants.

DURRANT, Justice:

## INTRODUCTION

¶ 1 The issue presented in this appeal is whether the City of Monticello (the "City") adequately notified its residents in 1979 of a

repurchase option retained by the City as part of an agreement covering the sale of the municipality's electrical power distribution system. The district court concluded that the notice provided by the City in 1979 was adequate and that, as a result, voters could have initiated a referendum on the decision to retain the option at that time. We affirm.

## BACKGROUND[1]

¶2 On April 24, 1979, the City held a special election that enabled voters to decide whether the Monticello City Council (the "Council") should be empowered to sell the City's electrical power distribution system (the "System"). An overwhelming majority of voters participating in that election authorized the Council to seek out an appropriate buyer and proceed with the sale.

¶3 On June 27, 1979, a notice of sale, prepared by the City, was read aloud at a Council meeting open to the public. At that meeting, it was brought to the Council's attention that the notice of sale neglected to state the City's intention to retain an option to repurchase the System twenty years after the date of sale. A revised notice, adopted by the Council on July 3, 1979, corrected the omission and was signed by the mayor. The official notice provided, in relevant part, as follows:

> The City reserves the right to repurchase the System at its option in twenty (20) years from the purchase date thereof at the then fair market value of said System as determined by an appraisal by a certified and qualified appraiser who is acceptable to the seller and the City.

The Council published the official notice in the *San Juan Record,* Monticello's local newspaper, on July 5, 12, 19, and 26, 1979. In addition, the *San Juan Record* ran articles covering the anticipated sale on July 5, August 16, and September 13, 1979. Each of the articles mentioned the repurchase option.

¶4 On September 19, 1979, the Council voted unanimously to accept the purchase offer submitted by Empire Electric Association ("Empire"), the sole bidder. On November 7, 1979, the Council passed Ordinance 79–11, which effectively transferred ownership of the System to Empire. In addition to providing for the transfer of the System, Ordinance 79–11 included a repurchase option that was consistent with the previously published notice of sale:

> This franchise shall be granted for a 20–year term from the date it is passed by the City Council and shall be automatically renewable at the end of said term for an additional 20–year term, unless the City exercises its right to repurchase the electrical system in accordance with terms set forth in that certain agreement between the parties dated August 8 and September 9, 1979.

The Council published the entirety of Ordinance 79–11 in the *San Juan Record* on November 15, 1979.[2]

¶5 On March 22, 2000, as the initial twenty-year franchise neared its completion, the Council passed Resolution 2000–2, which stated the City's intention to exercise its rights under the option and repurchase the System. A subsequent resolution, passed by the Council on April 6, 2000, authorized the issuance of up to $3,000,000 in municipal bonds in order to finance the repurchase.

¶6 Within two weeks following the passage of Resolution 2000–2, the San Juan County clerk received eleven formal petitions seeking a referendum on that resolution. The clerk verified the petitions and proceeded with preparations for a referendum. On June 29, 2000, however, the city recorder canceled the vote, stating that the "decision to repurchase the utility is a purely administrative decision that is not the proper subject of a referendum." Unhappy with the city recorder's determination, and seeking to prevent the exercise of the option in the manner contemplated by the Council, four City resi-

---

1. This case returns to this court following our remand in *Low v. City of Monticello,* 2002 UT 90, ¶31, 54 P.3d 1153, which provides a thorough recitation of all the facts relevant to the parties' broader dispute.

2. Because the *San Juan Record* was published on a weekly basis, November 15 was the first date the paper was published following the passage of the ordinance.

dents ("Appellants") initiated litigation on May 12, 2000, alleging violations of the Utah Municipal Bond Act, the Notice of Debt Issuance Act, and the Open and Public Meetings Act. The City filed a counterclaim seeking a declaration that the repurchase option was not subject to a referendum. On January 16, 2001, the district court granted the City summary judgment on its counterclaim, holding that Resolution 2000–2 constituted administrative action not subject to a referendum.

¶ 7 Appellants sought review of that determination and the matter was subsequently brought before this court for the first time in *Low v. City of Monticello,* 2002 UT 90, 54 P.3d 1153.[3] On August 30, 2002, we issued our opinion in *Low,* agreeing with the district court that the Council's exercise of the repurchase option constituted a mere administrative exercise of authority legislatively retained in 1979. *Id.* at ¶ 27. Because the legislative action that resulted in the retention of the option occurred in 1979, we concluded that the appropriate time to initiate a referendum concerning the option was in 1979.[4] *Id.* at ¶ 28.

¶ 8 However, the record before us at that time was insufficient to allow us to determine whether the City's residents were provided adequate notice of the legislative action retaining the option. *Id.* at ¶ 29. We noted in *Low* that, in order to "have a meaningful opportunity to exercise their constitutional right to a referendum on whether the city should have retained the option, the city must have afforded the voters adequate notice regarding the option when it was codified." *Id.* We therefore remanded the case, identifying two narrow issues to be addressed by the district court: (1) whether the special election held on April 24, 1979, encompassed the retention of the repurchase option; and (2) whether the City provided adequate notice of the repurchase option "such that the residents had an opportunity to initiate a referendum." *Id.* at ¶ 31. On remand, the City conceded that the repurchase option had not been voted on as part of the April 24, 1979 special election. This concession left, as the sole issue before the district court, the determination of whether the City provided adequate notice of the repurchase option.

¶ 9 Before the district court, Appellants conceded that the City, in passing Ordinance 79–11, complied with all "notices required by law." Appellants argued, however, that due process required more notice than was provided by the City's satisfaction of those requirements and that the City's actions taken as a whole failed to meet due process standards. The district court rejected this argument and concluded that the City provided adequate notice. The court based its conclusion on the City's compliance with the Utah Code's notification requirements, as well as additional actions taken by the City to notify residents of the repurchase option.

¶ 10 Appellants seek review of the district court's conclusion that the City provided residents adequate notice of the repurchase option. We have jurisdiction pursuant to Utah Code section 78–2–2(3) (2003).

## STANDARD OF REVIEW

■ ¶ 11 Both parties primarily approach the standard of review issue "as though the options [are] metaphorically black and white." *State v. Pena,* 869 P.2d 932, 936 (Utah 1994). Appellants argue that the district court's determination that the City provided adequate notice of Ordinance 79–11 is a question of law and should be reviewed for correctness. The City, on the other hand, contends that the district court's ruling was one of fact and should only be disturbed if clearly erroneous. The proceedings on remand were necessarily of a dual nature, however. Initially, the district court was required to find facts relevant to the issue of

---

**3.** In *Low,* Appellants also sought review of the district court's grant of summary judgment to the City on the Appellants' claim that the City violated the Utah Municipal Bond Act.2002 UT 90 at ¶ 32. We affirmed the district court's ruling, effectively disposing of that claim. *Id.* at ¶ 39.

**4.** In 1979, Utah Code section 20–11–24 required a petition for referendum to be submitted within thirty days from the date legislation was passed. Utah Code Ann. § 20–11–24 (1976). Presently, Utah Code section 20A–7–601(3)(a) allows a forty-five day time frame in which a petition for referendum may be filed. *Id.* at § 20A–7–601(3)(a) (Supp.2004).

notice. The district court was then required to determine, as a matter of law, whether those facts established that adequate notice was provided. In such circumstances, we grant deference to the district court's findings of fact, but grant no deference to its conclusions of law. *See Jeffs v. Stubbs*, 970 P.2d 1234, 1240 (Utah 1998). Consequently, in this case we defer to the district court's findings of fact relating to the steps taken to notify the City's residents of the repurchase option, but grant no deference to the district court's conclusion that those actions constituted adequate notice.

## ANALYSIS

¶ 12 This appeal presents a concise question: did the City provide "adequate notice to [its] residents concerning the retention of the option such that the residents had an opportunity to initiate a referendum"? *Low v. City of Monticello*, 2002 UT 90, ¶ 31, 54 P.3d 1153. The rationale underpinning the adequate notice requirement is obvious. *See Citizen's Awareness Now v. Marakis*, 873 P.2d 1117, 1123 (Utah 1994). "Voters are statutorily granted the right to be notified of changes and developments in their community's ... laws." *Id.* In the context of legislative changes, "voters must be given adequate notice ... so that they may institute referendum procedures promptly." *Id.* In this case, neither party contests the importance of providing adequate notice. Rather, the parties dispute whether the notification provided meets due process standards and, therefore, constitutes adequate notice. *See Dairy Prod. Servs., Inc. v. City of Wellsville*, 2000 UT 81, ¶ 49, 13 P.3d 581 ("The minimum requirements [of due process] are adequate notice and an opportunity to be heard in a meaningful manner.").[5]

¶ 13 Appellants stress their position that the notice provided to City residents fell short of the requirements of due process. Appellants conceded, however, both before the district court and in oral argument before this court, that the City complied with all statutes related to the validity of ordinances, as well as all statutes related to public notification of the passage of ordinances. Absent this concession, the City's compliance with the Utah Code when it passed Ordinance 79-11 may have been an issue. The Utah Code outlines various requirements that a municipality must satisfy when codifying an ordinance[6] and noncompliance with those requirements may be relevant to an inquiry into whether residents were given adequate notice of a legislative change in municipal law. However, Appellants' concession that the City satisfied the applicable statutory provisions not only focuses our due process analysis by eliminating the need to address the potential relevance of noncompliance with codification requirements, but additionally disposes of any allegation that Ordinance 79-11 was invalid due to noncompliance with the Utah Code.[7]

¶ 14 Appellants' claim of inadequate notice is not dependent, however, upon a showing that the City failed to comply with the Utah Code. Rather, Appellants' claim is based on the proposition that, due to the unique circumstances present in this case, mere statutory compliance was insufficient to meet due process standards. Consequently, we must determine whether the City's compliance with statutory notice requirements alone was sufficient to adequately notify its residents of the repurchase option and therefore satisfy the demands of due process. We conclude that it was.

---

5. In the present case, the requirement of an opportunity to be heard in a meaningful manner would have been satisfied by the referendum process itself. As a result, the only issue is whether the City provided adequate notice of its retention of the repurchase option. If the notice provided was adequate, then City voters were provided the opportunity to object to the option's retention in 1979.

6. For example, the 1979 Utah Code required passed ordinances to bear the seal of the municipality. Utah Code Ann. § 10-3-704 (Supp.1979).

Additionally, certain ordinances had to be deposited in the municipal recorder's office. *Id.* § 10-3-711. The recorder was also required to "record, in a book used exclusively for that purpose, all ordinances passed by the governing body." *Id.* § 10-3-713.

7. Regardless of the concession, we would be disinclined to consider such an allegation at this point in the present litigation, as the validity of Ordinance 79-11 was beyond the scope of remand.

¶ 15 Due process is not a rigid concept. *See V–1 Oil Co. v. Dep't of Envtl. Quality,* 939 P.2d 1192, 1196 (Utah 1997) ("[D]ue process is not a technical conception with a fixed content unrelated to time, place, and circumstances." (internal quotations omitted)). "Instead, due process is flexible and, being based on the concept of fairness, should afford the 'procedural protections that the given situation demands.'" *Dairy Prod. Servs.,* 2000 UT 81 at ¶ 49, 13 P.3d 581 (quoting *In re Worthen,* 926 P.2d 853, 876 (Utah 1996)). The extent of notice required in this case is merely "adequate notice," which provides an important, but relatively low, threshold to satisfy. Adequate notice is defined as "[n]otice reasonably calculated to apprise a person of an action, proceeding, or motion. Notice sufficient to permit an objection or defense." Black's Law Dictionary 37 (5th ed.1979). Our case law further illuminates this definition.

¶ 16 In *Dairy Product Services,* for example, we held that notice of a city's decision to not renew a business license was adequate when the city complied with notification procedures that it had adopted by ordinance. 2000 UT 81 at ¶¶ 50–51, 13 P.3d 581. In that case, the ordinance outlining notification requirements specified that the city was required to inform the business that its license was in jeopardy and that it was entitled to have the presence of counsel and to provide evidence in its defense at a public hearing. *Id.* at ¶ 50. We concluded that the notice provided pursuant to the ordinance "reasonably informed [the business], in a timely fashion.... It also afforded [the business] the opportunity to present any evidence or objections." *Id.* at ¶ 51. Because the notification procedure outlined in the ordinance was reasonable and allowed an opportunity for objection, we held that mere satisfaction of the ordinance's requirements met due process standards. *Id.*

¶ 17 More on point is this court's decision in *Naples City v. Mecham,* 709 P.2d 359 (Utah 1985). In *Naples City,* we held that a city gave adequate notice of its adoption of a traffic ordinance by virtue of its compliance with section 10–3–711 of the Utah Code, which required that a summary of any passed ordinance be published in a newspaper within the municipality, or, if no newspaper was published in the municipality, be disseminated by "posting complete copies in three public places within the municipality." *Id.* at 360. The appellant in *Naples City* was convicted of violating the traffic ordinance and argued that the city, which had posted copies of the ordinance on two telephone poles as well as in the city offices, had failed to provide him adequate notice of the ordinance's passage. *Id.* In holding that adequate notice was provided, we focused on the city's compliance with the Utah Code's notice requirements and concluded "that the statute establishes a reasonable means of providing general notice of the prohibited conduct." *Id.*

¶ 18 In the instant case, the parties agree that the City complied with all statutes relevant to notice, but Appellants assert that simple compliance was insufficient to satisfy due process under the unique facts of this case. This assertion is based on Appellant's belief that City residents were not provided with enough information about the details of the repurchase option to put them on notice that the option might, at some point in the future, be exercised in an objectionable manner. Appellants fail to recognize that the dearth of details itself could have provided a basis for a valid objection to Ordinance 79–11 and that voters had every right to initiate a referendum on that ground alone. Instead, the City's voters allowed the statutory time frame for petitioning for a referendum to run its course and acquiesced in the City's retention of discretion in exercising the repurchase option.

¶ 19 While it is true that the text of Ordinance 79–11 made reference to agreements that were not published, due process does not require municipalities to inundate residents with information about every possible detail of a given action or to foretell all potential consequences of that action. The published ordinance provided City residents with enough information to allow them to object and initiate a referendum if they so desired. In 1979, the Utah Code expressly permitted a municipality to publish a summary of any passed ordinance in order to

notify residents of its passage. Utah Code Ann. § 10–3–711 (Supp.1979). As in *Naples City*, we are unwilling to declare this form of notice unreasonable. As a result, we hold that the City's compliance with the notification requirements of the Utah Code, including the publication of Ordinance 79–11 pursuant to section 10–3–711, satisfied the demands of due process in the present case.

¶ 20 Although our decision rests only on the City's compliance with the publication requirements of the Utah Code, we note that the City actually provided more notice to the public than was required by statute. For example, instead of publishing a mere summary of Ordinance 79–11, the City published the ordinance in its entirety. Further, prior to the passage of Ordinance 79–11, the City published a notice of sale for four consecutive weeks, which alerted residents to the City's intention to secure the repurchase option.[8] Both of these actions exceeded the requirements placed upon the City by the Utah Code. However, although taking reasonable steps beyond the requirements of the Utah Code to inform citizens of legislative action taken by municipalities should be encouraged, such steps were not required in the present case.

## CONCLUSION

¶ 21 We affirm the district court's determination that the City provided its residents with adequate notice of the City's retention of the repurchase option. This conclusion rests on the City's compliance with the publication requirements of the Utah Code and is bolstered by the steps the City took that went beyond those requirements. Because the notice provided was reasonably calculat-

ed to inform City residents of the option's retention, we conclude that City voters had an adequate basis on which to object to the retention. The time to object by petitioning for a referendum, however, was in 1979. The City's voters failed to petition for a referendum at that time and are barred from doing so now. Affirmed.

¶ 22 Associate Chief Justice WILKINS, Justice PARRISH, Justice NEHRING, and Judge LAYCOCK concur in Justice DURRANT'S opinion.

¶ 23 Having disqualified herself, Chief Justice DURHAM does not participate herein; District Court Judge CLAUDIA LAYCOCK sat.

---

**8.** Appellants contend that the district court erred when it relied upon evidence of notification that occurred prior to the enactment of Ordinance 79–11, such as the four separate publications of the notice of sale. Appellants assert that, according to our prior case law, the only notification relevant to a determination of adequate notice in a referendum context is notice that was given contemporaneously with or subsequent to the passage of Ordinance 79–11. *See Low*, 2002 UT 90 at ¶ 29, 54 P.3d 1153 (citing *Citizen's Awareness Now*, 873 P.2d at 1123) ("City councils must give city residents adequate notice of legislative *enactments* so that the residents can be cognizant of legislative actions that they may

want to challenge by a referendum ...." (emphasis added)). The *Low* court also stated that "the city must have afforded the voters adequate notice regarding the option *when it was codified.*" *Id.* (emphasis added). Because we conclude that adequate notice was provided by the City's compliance with the notification requirements of the Utah Code, including the City's publication of the entirety of Ordinance 79–11 on November 15, 1979, an event subsequent to the enactment of the ordinance, we need not reach the Appellants' contention that the district court erred in relying upon evidence of other notifications.